UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

PATRICK PROTOR,

                         Plaintiff,                              09-CV-1114

          -against-                                              GLS/DEP

LUCIEN J. LECLAIRE, JR., Deputy
Commissioner, Department of
Correctional Services,

                         Defendant.

-------------------------------------------------------X

U.S. DISTRICT COURT - N.D. OF N.Y.
**FILED**
FEB 1 9 2010
AT_____ O'CLOCK_____
Lawrence K. Baerman, Clerk - Syracuse

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(B)(6)

PATRICK PROCTOR, 89-A-9763
*Pro se*
Clinton Correctional Facility
P.O. Box 2001
Dannemora, New York  12929

Dated: February 16th, 2010

## PRELIMINARY STATEMENT

This action was commenced on or about October 5, 2009, by the Plaintiff, **PATRICK PROCTOR**, asserting violations of his due process rights pursuant to 42 U.S.C. §1983. This Memorandum of Law is submitted by Plaintiff, a New York State Prisoner, proceeding *pro se*, in opposition to Defendant Lucien LeClaire's ("LeClaire" or "Defendant LeClaire") Motion to Dismiss the complaint pursuant to F.C.R.P. 12(B)(6).

## STATEMENT OF FACTS

Plaintiff complains about Defendant LeClaire maintaining him in Administrative Segregation ("Ad Seg") using <u>meaningless</u> sham 'Periodic Reviews' that are performed in a rote and perfunctory manner in order to indefinitely confine him to Ad Seg in violation of the 14th Amendment Due Process Clause (See Complaint ¶¶ 23, 72 and Complaint generally). The due process violations are ongoing, and are specifically related, and are being allowed to continue unremedied for so long, while relying on a discriminatory policy or practice, as to amount to a Constitutional Violation (See Complaint ¶¶ 23, 73 and Complaint generally). Defendant LeClaire is personally involved, not only because he is designated to perform the reviews (see Complaint ¶ 4), but he has actively taken part in all aspects of the reviews (i.e. since the very first review of 2-23-04 to present – Complaint ¶ 14) that Plaintiff asserts are meaningless. (See Complaint ¶¶ 13, 18, 21, 23-24, 28, 31-32, 35, 40, 42-43, 45-48, 51, 53, 55, 57, 59, 60-61, 64, 67 also see Complaint Exhibit B, pg 3). Plaintiff's claims are not barred by the Doctrine of Claim Preclusion, Defendant is (see Complaint ¶39). If the Court accepts the allegations of the Complaint as true, and entitles the Plaintiff to offer evidence to support his claims, and merely assesses the legal feasibility of the complaint, then Plaintiff believes the Complaint at ¶¶23-25 asserts proof the complaint is timely.

## OPPOSITION ARGUMENT

## POINT I

### The Complaint Alleges a Plethora of Evidence of Personal Involvement on the Part of Defendant LeClaire

Defendant LeClaire 1) directly participated in the violation of Plaintiff's Constitutional Rights; 2) created a policy or practice under which Constitutional Violations occurred; and 3) had notice that the Constitutional Violation(s) were going to occur and failed to act, *Colin v. Coughlin,* 58 F.3d 865, 873 (2nd Cir. 1995).

Defendant attempts to muddle facts and bamboozle this Court into dismissing this complaint. Plaintiff has incorporated into his complaint facts, that if accepted as true, show a plethora of evidence that LeClaire has been personally involved in all respects, using sham, perfunctory and meaningless periodic reviews to maintain him in Ad Seg indefinitely.

LeClaire was designated to handle these reviews by the Commissioner (see Complaint ¶4). His signature appears on the very first review that does not comply with due process (see Complaint ¶14) and even after reviewing eight different reviews, spanning a 14 month time period where the same person whom placed Plaintiff in Ad Seg, also sat on the committee reviewing the matter (See Complaint ¶22), he still elected to sign off on each of these reviews, maintaining Plaintiff in Ad Seg. (See Complaint ¶¶ 13-21 generally, also see ¶¶ 28, 31-32, 35, 40, 48, 51, 53, 57, 59, 61).

In over a six-year period, Plaintiff has submitted many letters to be considered by Defendant LeClaire, all of which put him on notice of some sort of violation or another (i.e. whether it be inaccurate/erroneous information being considered within the reviews, or the reviews considering previously Court ordered expunged disciplinary misconduct allegations, or the Captain that was the Ad Seg placement hearing officer – also sitting as committee chairman

reviewing the matter, or the reviews being a sham, etc. etc.).(See Complaint ¶¶15, 33, 36, 41, 45, 49, 54, 56-58, 60, 62).

Defendant LeClaire even wrote Plaintiff in response to a letter he wrote to the Commissioner, which the Commissioner forwarded to LeClaire, because he is the ultimate authority maintaining Plaintiff in Ad Seg (Complaint ¶42). Just one example of proof LeClaire reviews all Plaintiff's letters/objections (see Complaint ¶51). Plaintiff wrote a very detailed letter to the Governor about his Ad Seg situation (Complaint ¶56) and this letter was reviewed by LeClaire (Complaint ¶57).

Plaintiff believes, based on all the facts as set forth in the Complaint, that LeClaire created a policy or practice of ignoring his right to receive meaningful periodic reviews, and keeps rubber-stamping them in order to indefinitely confine Plaintiff to Ad Seg. The Second Circuit has ruled prisoners have a Constitutional Right to receive meaningful periodic reviews (see *Tellier v. Fields*, 280 F.3d 69, 77-83 (2nd Cir. 2001)). A Trier of fact could well view such asserted inaction in the face of explicit notice of problems, as tantamount to deliberate indifference by Defendant LeClaire. *Langley v. Coughlin,* 715 F.Supp. 522, 546 (S.D.N.Y. 1989); United States *ex rel. Larkins v. Oswald*, 510 F.2d 583, 589 (2nd Cir. 1975) (defendant is liable if, after learning of a violation through report or appeal, failed to remedy the wrong); *Brooks v. Berg,* 270 F.Supp.2d 302, 308 (N.D.N.Y. 2003) (same).

Defendant LeClaire is not entitled to qualified immunity because, as discussed in *Tellier, supra* at 77-83, Plaintiff has a recognized Constitutional Right to meaningful periodic reviews. It was clear the reviews must be sufficient "to dispel any notions the confinement was a pretext" *Hewitt v. Helms*, 459 U.S. 460, 478 n. 9 (1983). Thus, it was clearly established at the time of the Plaintiff's confinement, that a *pro forma* review process, which failed to take into

consideration readily available information relevant to the reasons for the confinement, amounted to a denial of due process. See *Giano v. Kelly*, 2000 WL 87 35*24 876855 (W.D.N.Y.) (Attached to Defendant's Memorandum of Law, Appendix D); (or see page 17 of Appendix D).

The procedures being used to maintain Ad Seg are not adequate to safeguard Plaintiff's liberty interests in avoiding Ad Seg, and receive meaningful periodic reviews, because they are only a pretext to punish and retaliate against him (see Complaint ¶55).

**WHEREFORE,** based upon all the above, the Complainant alleges ample personal involvement on the part of Defendant LeClaire, and he is not entitled to qualified immunity, and the Complaint should not be dismissed.

## POINT II

### Plaintiff's Claims are not barred by the Doctrine of Claim Preclusion

Yes, Plaintiff did previously bring a due process claim against LeClaire relating to his original placement in Ad Seg. (See Defendant's Memorandum of Law, Appendix B). Even now Know he attempted to bring a due process claim in that §1983 as to the sham 'Periodic Reviews' maintaining him in Ad Seg (Id Appendix B ¶89). Judge Suddaby's Memorandum Decision and Order filed December 16, 2008 ruled the reviews were not before the Court (Id Appendix A at pp 14-16).

In this §1983, Plaintiff is <u>not</u> challenging his original placement in Ad Seg, nor are the present assertions identical to those raised against LeClaire in the previous §1983, as is solidified in Judge D.E. Peebles Decision and Order filed November 25, 2009, Id at p2, footnote 1.

In Defendant's Memorandum of Law at p. 4, he attempts to show the Court that Plaintiff's claims are the same by relying on the wording "placement and maintenance" and "placement and maintaining the Plaintiff in Ad Seg," that was in the previous §1983 (see

Defendant's Memorandum of Law, Appendix B ¶89), yet in the previous §1983, Defendant diligently rejected that same wording as sufficient to place him on notice Plaintiff was asserting a cause of action on Periodic Reviews. Thus the Court rejected Plaintiff's claim (see Id Appendix A p. 14).

The previous §1983 dealt with violations that derived directly from the placement hearing. Upon information and belief, Plaintiff has a continuing due process right to 'Periodic Reviews' of his confinement so that Ad Seg is not used for indefinate confinement, *Hewitt v. Helms,* 459 U.S. 460, 477 n.9 (1983), and those reviews must be meaningful, *Doe v. Simon,* 221 F.3d 137, 139 (2nd Cir. 2000); *Tellier v. Fields,* 280 F.3d 69, 77-83 (2nd Cir. 2001) (same) (see also, Complaint ¶12). The due process violations are recurring and ongoing (Complaint ¶¶ 72-73). So any prior decision/order did not cure the violations that have happened after the initial placement hearing.

In the first §1983, Plaintiff was only entitled to notice and a right to be heard *Hewitt supra,* 459 U.S. at 476; *Soto v. Walker*, 44f3d 169, 172 (2nd Cir. 1995) (same).

In the current §1983 ("of course Ad Seg may not be used as a pretext for indefinate confinement of an inmate" and "prison officials must engage in some sort of periodic review of the confinement of such inmate" and the reviews must be sufficient "to dispel any notions that the confinement was a pretext") *Hewitt supra,* 459 U.S. at 477 n. 9; and the reviews must be meaningful Id *Tellier* supra, 280 F.3d at 77-83.

So, if Plaintiff can show Defendant is relying upon previously court ordered expunged information (some examples, see Complaint ¶¶15, 18-20, 24 and Complaint Exhibits B-C) to maintain him in Ad Seg even in 2009, or fabricated information (See Complaint ¶¶26, 40) or information he was previously found innocent of (see Complaint ¶32) yet is still being relied

upon to maintain Ad Seg placement, Plaintiff is barred from doing so because these or similar issues may have previously been mentioned prior to the claims even happening in this §1983?

In all the examples mentioned in Defendant's Memorandum of Law at pp. 4-5, the time between the dismissed issues and the present issues are, in most cases, years apart. Since the Plaintiff has an ongoing right to due process with the reviews, any argument that those events should be barred, is false. How else can Plaintiff show the reviews are a sham, considering erroneous information and are performed in a rote, perfunctory manner, making them meaningless? See *Giano v. Kelly*, 2000 WL 876855*24 (W.D.N.Y.) (attached to Defendant's Memorandum of Law, Appendix D) ("A *pro forma* review process which failed to take into consideration readily available information relevant to the reasons for the inmate's confinement amounted to a denial of due process"); *Childs v. Pellegrin*, 822 F.2d 1382, 1388-89 (6th Cir. 1988) ("Keeping a Prisoner in Ad Seg based on a misconduct charge of which he has been cleared, denies due process").

See Appendix A at pp. 14-15 of Defendant's Memorandum of Law. Defendant quotes this claiming the Court addressed the merits of the claim and rejected it. Plaintiff cross-moved for Summary Judgment in that §1983 (see Complaint ¶¶6, 11) thus was held to a higher legal standard he could not meet without testimony. So, he did not have a full and fair opportunity to litigate in the prior proceeding. In all fairness, the prior decision could not have been a final judgment made on the merits, because there was no cause of action before the Court at that time regarding "Periodic Reviews." It is well settled that a prior judgment "cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case" *Marvel Character, Inc. v. Simon,* 310 F.3d 280, 287 (2nd Cir. 2002) (citing *Lawlor v. Nat'l Screen Service Corp*, 75 S.Ct. 865, 868 (1955).

- 6 -

Defendant argues Plaintiff's claims could have been raised in his prior case. Plaintiff rejects that theory. At the time of that §1983, there was insufficient evidence the Ad Seg reviews were a sham and Ad Seg is, for all intents and purposes, permanent. Now Plaintiff can prove it through all the reviews. As pointed out in Judge Suddaby's Memorandum-Decision and Order at pp. 15-16 (see Appendix A of Defendant's Memorandum of Law) "an inadvertent denial of a periodic review does not give rise to a due process violation." So Plaintiff has to show facts and circumstances over a period of time, how his reviews are perfunctory and meaningless (see Complaint ¶25).

If anything, Plaintiff has shown how Defendant is barred by the Doctrine of Claim Preclusion (see Complaint ¶39).

Plaintiff also asserts the fact that the prior §1983 was litigated *pro se*. This is a crucial factor in determining the applicability of claim preclusion. Plaintiff's who proceed *pro se* are entitled to have their arguments held to "less stringent standards than formal pleadings drafted by lawyers" *Haines v. Kerner* 404 U.S. 519, 520 (1972). Since the prior federal action was handled *pro se* the Court should disallow the application of claim preclusion *West v. Ruff*, 961 F.2d 1064 (2nd Cir. 1992); *Clark v. Department of Correctional Services*, 564 F.Supp. 787 (S.D.N.Y. 1983).

**THEREFORE,** the claims raised in the present complaint are not barred.

## POINT III

### The Complaint is timely.

Defendant's Memorandum of Law at p. 5, under Point II, he asserts Plaintiff alleges constitutional violations by Defendant LeClaire, beginning in April 2005. That's not true. He asserts constitutional violations by LeClaire going back to the very first sham, meaningless review of 2-23-04 (see Complaint ¶¶14, 55, 72-73).

- 7 -

The Plaintiff is entitled to the benefit of the continuing violation doctrine because he asserted facts sufficient to state a claim of an ongoing discriminatory policy or practice. In this case, there are dual over-lapping relations between the ongoing discriminatory practice and the ongoing sham reviews. See Complaint at ¶¶27-28, 30, 67-68 for some examples of an ongoing discriminatory policy or practice. Please bear with me here, as Circuit Judge Calabresi states in *Soto v. Walker,* 44f3d at 170, "the intricacies attending the law of prisoners' due process rights can confuse even the most experienced of lawyers." A lesser standard applies to *pro se* litigants.

The decision maker must determine if the reason for Ad Seg confinement remains valid and must review "then-available" evidence. See *Hewitt v. Helms* 459 U.S. 460, 476 (1983). In this context, "then" must be taken to refer to the point at which the review occurs. Therefore, if 'new' relevant evidence becomes available following the initial review of the inmates Ad Seg confinement, the decision maker is obligated to consider that evidence. Id at *Giano v. Kelly,* 2000 WL 876855*17 (W.D.N.Y.) (Attached to Defendant's Memorandum of Law, Appendix D).

7 N.Y.C.R.R. §301.4(d) says in relevant part: "an inmate in Ad Seg status shall have such status reviewed every sixty days." Plaintiff believes/asserts based on all the above, it is safe to assume that every 60 days, the previous Ad Seg periodic review expires, and that he should receive a right too be heard prior to the next decision is formally made to deny liberty for an additional sixty (60) days. Especially a decision containing 'new' and or 'changed' reasons. The problem is, defendant uses 'new' and or 'changed' reason why he is continuing Ad Seg, all the time. Plaintiff's right to respond in a meaningful Time and manner with objections to the previous review, was already violated, regardless of when he submits objections. 7 N.Y.C.R.R. §301.4 (d)(4) explains they will not be considered until the next review period – which all reviews are 60 days apart, thus, the discriminatory policy/practice.

- 8 -

When Plaintiff's written objections are received and found to have valid proof something contained in a previous review was not supposed to be there or was erroneous, Defendant may remove it. The problem is, it has already been relied upon to deny liberty for at least 60 days already, and in some cases years. Violating his right to be heard in a meaningful time and manner. *Parrott v. Taylor*, 451 U.S. 527,540 (1981); *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965) (Same).

The Second Circuit has found that the failure to provide such "informal review procedures within even as short a time as seven days in connection with a transfer into administrative confinement, states a due process claim." *Soto v. Walker*, *Supra* 44 F.3d at 172 : See also *Russell v. Coughlin*, 910 F.2d 75,78 (2nd Cir. 1990) (Ten day delay violate of due process); Gittens, 891 F.2d at 41 (Seven day delay violative of due process).

So Plaintiff's argument here is, if every sixty (60) days he is entitled to due process, how is he receiving that due process if he is not being allowed a right to be heard, especially on 'new' and or 'changed' reasons for maintaining him in Ad Seg, until 60 days after the formal jurisdictional decision was already made utilizing information to deny him liberty for an additional sixty (60) days? Please see *Kim v. Hurston*, 182 F.3d 113,114 (2nd Cir 1999) ("While inmate had no procedural due process right to prior notice of her physical removal from work release program, which was based on positive drug test, since that removal occurred in context of an emergency, inmate was entitled to hearing to dispute the ground that was alleged to exist for removal, and to know the reason for it, prior to her formal jurisdictional removal from program," U.S.C.A. Const. Amend. 14); *Patterson v Coughlin*, 761 F. 2d 886,892 (2nd Cir 1985) ( "The opportunity to be heard before the state derives an individual of life, liberty or property is still the "Root Requirement'" of the due process clause").

- 9 -

Now see the rest of the entire complaint starting at ¶12, for the examples of the ongoing sham, meaningless reviews that are over-lapping into the discriminatory policy and practice issues.

In this case, the Courts in this Circuit favor the application of the Continuing Violation Doctrine.   See *Shomo v. City of New York,* 579 F.3d 176, 181-182 (2nd Cir. 2009) ("the commencement of the Statute of Limitations period may be delayed until the last discriminatory act in furtherance of " ...Id "must allege both the existence of an on-going policy of discrimination and some non-time-barred acts taken in furtherance of that policy" ...Id "repeat conduct" that "occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own" ...Id "the continuing violation doctrine can be applied when the Plaintiff's claim seeks to redress for injuries resulting from "a series of separate acts that collectively constitute an 'unlawful [act]" ...Id "the Continuing Violation Doctrine applied because the Prisoner's claim related to a "continuous series of events giv[ing] rise to a cumulative injury"...Id "a series of predicate acts forming the basis for a single claim"...Id "doctrine can apply when a prisoner challenges a series of acts that together comprise an 8th Amendment claim of deliberate indifference"...Id at 181-182.

As pointed out in Plaintiff's complaint ¶25, and as stated in Judge Suddaby's previous Decision and Order at pp. 15-16 (See Defendant's Memorandum of Law, Appendix A) "an inadvertent denial of a periodic review does not give rise to a due process violation."

So at the time of the first §1983, there was insufficient evidence the reviews were a sham and Ad Seg is, for all intents and purposes, permanent.  Now, using the Continuing Violation Doctrine and placing all the evidence of sham, meaningless reviews, along with the discriminatory policy or practice, together over a period of time, Plaintiff can now show the

injuries resulting from "a series of separate acts that collectively constitute an 'unlawful [act]' or a "continuous series of events giv[ing] rise to a cumulative injury."

**THEREFORE,** Plaintiff's claims relating to the events that occurred from the very first Periodic Review (i.e. 2-23-04) (See Complaint ¶14) are timely.

**CONCLUSION**

For the reasons discussed above, Defendant's Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6), should be dismissed/rejected, along with any further relief the Court deems just and proper.

Dated: February _16^TH_, 2010
        Dannemora, New York

By: _Patrick Proctor_
**PATRICK PROCTOR,** *Pro se*
89-A-9763
Clinton Correctional Facility
P.O. Box 2001
Dannemora, New York 12929

To:    Adrienne J. Kerwin
       Assistant Attorney General, of Counsel
       Office of the Attorney General
       The Capitol
       Albany, New York  12224-0341

cc:    file

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

PROCTOR v. LECLAIR, 9:09-CV-1114          PROOF OF SERVICE
            GLS/DEP

-------------------------------------------------------X
STATE OF NEW YORK)
COUNTY OF CLINTON)         ss.:
TOWN OF DANNEMORA)

     **PATRICK PROCTOR,** declares under penalty of perjury, pursuant to 28 U.S.C. §1746,

that on the _16ᵗʰ_ day of February, 2010, he mailed a true and exact copy of his Memorandum of

Law in opposition to Defendant's Motion to Dismiss pursuant to F.R.C.P. 12 (B)(6), and cover

letter to the Court Clerk by first class mail on the following party, Attorney for Defendant:

Ms. Adrienne J. Kerwin,
Assistant Attorney General, of Counsel
Office of the Attorney General
The Capitol
Albany, New York  12224-0341

by placing them in an envelope, marked **URGENT LEGAL MAIL**, with no postage on it and

placing it in the mail box maintained by Clinton Correctional Facility, where the mail will

receive postage at the mail room and mailed under the exclusive care and custody of the United

States Postal Services.


Dated: February _16ᵗʰ_, 2010
      Dannemora, New York

                                         *Patrick Proctor*
                                   **PATRICK PROCTOR,** *Pro se*