UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

PATRICK PROCTOR,                          JURY TRIAL DEMANDED

　　　　　Plaintiff,

　　　　　　　　　　　　　　　　　　　AMENDED COMPLAINT

　　-against-

LUCIEN J. LeCLAIRE, JR., Deputy
Commissioner, Department of            Civil Case No.: __9:09-CV-1114__
Correctional Services,                              (GLS)(DEP)

　　　　　　　　　Defendant.
-------------------------------------------------------X

## PRELIMINARY STATEMENT

This is a civil action filed by **PATRICK PROCTOR,** a state prisoner, for damages (compensatory and punitive), injunctive relief and declaratory judgment under 42 U.S.C. §1983, alleging violations of his due process of Law, and discriminatory policy or practice, which resulted in the loss of Liberty and caused atypical and significant hardship.

## JURISDICTION

1)　　This Court has jurisdiction over Plaintiff's claims of violations of federal Constitutional Rights under 28 U.S.C. §§1331 and 1343 (A)(3)(4). Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§2201, 2202. Plaintiff's claims for injunctive relief are authorized by 28 U.S.C. §§2283, 2284 and Rule 65 of the Federal Rules of Civil Procedure.

## VENUE

2)　　The United States District Court for the Northern District of New York, is an appropriate venue under 28 U.S.C. §1391 (b)(2) because it is where the events given rise to this claim occurred.

## PLAINTIFF

3) Plaintiff, **PATRICK PROCTOR**, IS A New York State Prisoner who is incarcerated within the New York State Department of Correctional Services ("DOCS") at the Clinton Correctional Facility ("CCF"), in Dannemora, New York, and all events described in this complaint happened at the CCF and Great Meadow Correctional Facility ("GMCF"), which both facilities fall within the venue of the Northern District.

## DEFENDANT

4) Defendant, **LUCIEN J. LeCLAIRE, JR.,** is the Deputy Commissioner of the State of New York DOCS. In that capacity, he was given the responsibility by the Commissioner, pursuant to 7 N.Y.C.R.R. §301.4 *et seq,* for making the final determination to maintain Plaintiff in Administrative Segregation ("Ad Seg") using "Periodic Reviews" that are in compliance with the due process of Law. There are also state created Liberty interests that are protected by the Due Process clause.

5) Defendant LeClaire is sued in his individual capacity, as well as his official capacity. The Defendant has acted and continues to act under color of State Law at all times relevant to this complaint.

## PRIOR COURT PROCEEDINGS

6) This is the first Federal Court proceeding that Plaintiff has submitted in which he is directly challenging the deprivations caused by Defendant LeClaire maintaining him in Ad Seg using sham, perfunctory "PERIODIC REVIEWS" that are not meaningful. Plaintiff previously submitted a 42 U.S.C. §1983 (*PROCTOR V. KELLY, et al.,* 9:05-CV-0692 N.D.N.Y. (GTS)(GJD)) and attempted to allege a "Periodic Review" claim before this Court, but in Judge Suddaby's Memorandum Decision and Order filed December 16, 2008 (*Id* at pages 14-16), he

ruled the reviews were not properly before the Court, since Plaintiff never mentioned the words "Periodic Reviews" in his Amended Complaint. So he is not collaterally estopped from bringing this claim.

7) Two other previous court proceedings that will be mentioned herein are: *PROCTOR V. COOMBE,* 233 A.D.2d 648 (3rd Dept. 1996); and *PROCTOR V. GOORD,* 801 N.Y.S.2d 517 (Sup. Ct. 2005).

## FACTS

8) On December 8, 2003, while housed within the GMCF, Plaintiff completed his term of nine years and one month of confinement in the Special Housing Unit ("SHU"). That confinement was imposed for various disciplinary infractions, including, but not limited to, escape, weapon, assault, fighting, etc.

9) Plaintiff was never released from SHU on December 8, 2003, instead, on December 9, 2003, he was served with an Ad Seg recommendation that was dated 12-8-03, and authorized by a Deputy Inspector General George Seyfert.[1] In that recommendation was listed approximately 14 specific allegations of previously completed misconduct, as well as general references to allegations of inappropriate conduct ranging over a 20 year period.

10) On December 24, 2003, Plaintiff was officially placed in Ad Seg status by a Captain Charles F. Kelly, Jr., who was Plaintiff's Hearing Officer.

11) Plaintiff did submit a §1983 (see ¶6 herein) to challenge various procedural violations as well as conditions of confinement violations. Upon information and belief, Plaintiff lost that suit because of lack of legal training. He cross-moved for Summary Judgment instead of just opposing Defendant's motion. Because he cross-moved, he had to prove every aspect of his case (including Defendant's state of mind) on paper. This was something impossible to do

---

[1] George Seyfert has since retired.

without testimony. He also lost that suit, partially because he did not properly identify the "Periodic Reviews" within his Amended Complaint, not affording Defendants notice. Thus Judge Suddaby ruled the reviews were never before the Court.

12) Upon information and belief, Plaintiff has a continuing Due Process Right to "Periodic Reviews" of his confinement so that Ad Seg will not be used for indefinite confinement. See *Hewitt v. Helms,* 459 U.S. 460, 477 n. 9 (1983). These reviews are to be held pursuant to 7 N.Y.C.R.R. §301.4(d), (1), (3), (4)(e) and those "Periodic Reviews" must be meaningful. See *Doe v. Simon,* 221 F.3d 137, 139 (2nd Cir. 2000), *Tellier v. Fields,* 280 F.3d 69, 77-83 (2nd Cir. 2001). Theoretically, Plaintiff is being maintained in Ad Seg based upon these 60 day reviews, and Defendant LeClaire handles the final state of the review process and has the power to release Plaintiff.[2]

13) Plaintiff's first periodic review is dated 2-23-04. §A calls for "information on inmates <u>subsequent</u> behavior and attitude" yet this § contains the following: "Last serious misbehavior report dated 8-25-03; Harassment, 90 days SHU added." The § that calls for <u>subsequent</u> information, contains information that is said to have happened six months <u>prior to</u> the 2-23-04 review.

14) §B of the same review says in relevant part: "Inmate Proctor has a lengthy criminal record that includes convictions for a number of violent felony offenses, including Murder." Plaintiff never received notice and a right to be heard in a meaningful time and manner <u>prior to</u> this 'changed' reason (i.e. Murder) being relied upon to deny him liberty. There was no 'Murder' as an original reason why he was being placed in Ad Seg. Plaintiff was never afforded

---

[2] He says 'theoretically' because he intends to prove the '60 day Reviews' are being used as a cloak for the real reasons why he is being maintained in Ad Seg (To wit: Discipline, Retaliation and Revenge), and he intends to prove the procedures being used to maintain Ad Seg, are meaningless, a sham, a fraud, are being applied in a rote fashion, and are a pretext for indefinite confinement, thus denying Plaintiff the most fundamental Right of Due Process: A meaningful opportunity to be heard.

notice this 'changed' reason was being used as an excuse to maintain Ad Seg placement (when this 'changed' reason existed <u>prior to</u> the original placement hearing) until after the formal jurisdictional decision was already made to maintain placement for another 60 days. Upon information and belief, Plaintiff was entitled to notice and right to be heard to dispute the ground that was alleged to exist for continued confinement <u>prior to</u> his formal jurisdictional decision was made to continue confinement for an additional 60 days. Upon information and belief, *res judicata* applies, because this information could have been raised at the Ad Seg placement hearing, yet was not. Upon information and belief, this is the start of the asserted discriminatory policy or practice, where Plaintiff is not allowed a right to be heard until approximately 60 days after the formal jurisdictional decision has already been made. §C had Defendant LeClaire's signature maintaining/approving Ad Seg placement.

15) On March 24, 2004, Plaintiff submitted a supplemental Administrative Appeal to then Commissioner Goord. Commissioner Goord sent Defendant LeClaire the appeal for response because he handles all Plaintiff's Ad Seg reviews. Within the body of that appeal were exhibits showing a toe-nail clipper 'weapon' was supposed to have been expunged off Plaintiff's records in 1996 (see *Proctor v. Coombe*, 233 A.D.2d 648 [3rd Dept. 1996]). Yet even know LeClaire was placed on notice and had the power to release Plaintiff, in a letter dated April 6, 2004, he denied all relief.

16) Plaintiff's second review is dated 4-9-04. As is the case in the review detailed in ¶13 herein, §A calls for "information on the inmates <u>subsequent</u> behavior and attitude." Yet this § contains information said to have happened over seven (7) months <u>prior to</u> this 4-9-04 review. §B, page 2, ¶1 says in relevant part: "The most recent misbehavior report issued against inmate Proctor alleges that on April 3, 2004, while a Correction Officer was securing the inmate with

handcuffs through the handcuff port of the security gate, inmate Proctor intentionally jerked forward pulling the officer's hand into and against the port. The hearing on that report is still pending at the time of this recommendation." Then page 2, ¶2 starts with: "The Committee believes that based upon the forgoing, the inmate's presence in general population would pose and unacceptable risk to the security of any Correctional Facility." Upon information and belief, LeClaire relied upon this 'new' information (i.e. handcuff alleged assault) to maintain Ad Seg placement for an additional 60 days, and Plaintiff was not afforded <u>notice</u> this 'new' reason was being relied upon to maintain Ad Seg, until after the formal jurisdictional decision was already made utilizing it, and Plaintiff was not afforded a <u>right to be heard</u>, except in a review held 60 days after the formal jurisdictional decision was already made utilizing the 'new' information to deny liberty. Plaintiff <u>was</u> prejudiced by this denial of his right to be heard in a meaningful time and meaningful manner prior to the formal jurisdictional decision was made to deny liberty, because after a due process hearing was held into the validity of the 'new' allegations (i.e. handcuff alleged assault) he was found innocent. As in all reviews, a discriminatory policy and practice of denying Plaintiff a right to be heard in a meaningful time and manner prior to the formal jurisdictional decision is made to deny liberty. §C has LeClaire's signature denying release.

17) On 5-30-04, Plaintiff wrote directly to Defendant LeClaire regarding his 60 day reviews. Amongst other issues, he further put LeClaire on notice that inaccurate information is being relied upon to maintain Ad Seg.

18) Plaintiff's third review is dated 6-11-04. In §B, page 2, ¶2, it says in relevant part: "In light of the inmate's extensive criminal history, that includes among other crimes, murder and an armed break-in of a private residence, were inmate Proctor to once again escape from

custody, the general public would be endangered." It should be noted the "armed break-in of a private residence" is a 'changed' reason why Plaintiff is being maintained in Ad Seg. This 'changed' reason was added since previous reviews. Plaintiff was not afforded notice this 'changed' reason was being utilized until after the formal jurisdictional decision was already made utilizing it, and not afforded a right to be heard, except in a review held 60 days after the formal jurisdictional decision was made to deny liberty. That is part of the discriminatory policy or practice and upon information and belief, *res judicata* applies because this information could have been raised and adjudicated at the original Ad Seg placement hearing.

19) The review of 6-11-04 at §B, page 2, ¶3, acknowledges receipt of the letter described in ¶17 herein, and mentions the disputed items by reference, stating in relevant part: "The Committee notes, however, that challenges to such evidence could have been raised during the original Ad Seg hearing. The Committee further notes that the Ad Seg hearing determination was affirmed upon administrative appeal and has not been overturned by any Court. Consequently, this committee can rely on that determination." Upon information and belief, the committee must review "then available" evidence, which refers to the point at which the review occurs, and if they find the information to be inaccurate, they are obligated to correct it/not consider it as a reason to maintain Ad Seg placement. Had Defendant LeClaire investigated the information Plaintiff provided, he would have been aware (at least at that point) that the June 6, 1995 'sharpened nail clipper' was already supposed to be expunged (see *Proctor v. Coombe,* 233 A.D.2d 648 [3rd Dept. 1996] and the September 29, 1995 'set fire to cell' does not appear on his disciplinary history because he was already found innocent in October 1995, at Auburn Correctional Facility before Hearing Officer Captain Rourke.

20) Also, had Defendant LeClaire investigated the information Plaintiff provided him (see ¶17 herein), he would be aware that an alleged separatee/enemy named Steven Milbank, is dead. That he died the month prior to the original Ad Seg recommendation being drawn up. Just because the full 21 separatees/enemies were relied upon to place Plaintiff in Ad Seg, LeClaire should have performed meaningful reviews and looked into readily available information (as he was obligated to do) which would have shown Steven Milbank was dead, and should not have been considered as a valid reason to maintain Plaintiff in Ad Seg. Yet §A of every review starting from the first review of 2-23-04, to the 4-1-05 review, all indicate "the inmate has amassed 21 separatees," the same amount that includes Steven Milbank. Upon information and belief, this is evidence of the rote fashion in which these reviews are handled. See §C for LeClaire's signature approving continued confinement, despite the above.

21) Plaintiff wrote then Superintendent Greene, at GMCF, a letter dated 7-8-04, which he wished to be taken into consideration at his next review. Several subjects were addressed, but specifically he complained about an un-signed fabricated memo being relied upon to maintain him in Ad Seg, as well as staff at GMCF telling him the boss ordered his confinement, and all reviews are meaningless. Previously noted herein information was also addressed.

22) Plaintiff's fourth periodic review is dated 8-5-04. §A mirrors all previous reviews. §B, page 2, ¶4 makes note of ¶21 letter, but says the letter is dated July 19, 2004, when it is date 7-8-04. §B, page 2, ¶4 admits the number of separatees declined, yet §A still contains the same number of separatees used as an excuse by §A Review Committee Members to maintain Plaintiff in Ad Seg, (i.e. 21). §B, page 2, ¶4 makes note of the issues raised in ¶21 herein letter, saying in part: "these issues were or could have been raised at the original Ad Seg hearing." Upon information and belief, the above is proof of rote, perfunctory reviews and proof the Defendant is

relying upon the original hearing decision and not taking into account readily available proof (then available evidence), that information either changed since the original hearing, or was inaccurate at that hearing. §C has LeClaire's signature continuing confinement.

23) On 8-26-04, Plaintiff wrote then GMCF Superintendent Greene a letter to be taken into consideration at his next review.

24) Plaintiff's fifth review is dated 10-6-04. §A mirror's all previous reviews. §B, page 2, ¶4 says in relevant part: "despite inmate Proctor's stated belief to the contrary, the Committee is not considering the number of inmate separatees that inmate Proctor once had, but rather on the number that currently remain." Clear proof that is not true (upon information and belief) is, §A of the same review has the same (21) separatees listed as an excuse why the first §A Review Committee signed off to maintain Ad Seg placement. This number (21) was originally relied upon to place him in Ad Seg. More evidence of rote reviews? §C has Defendant LeClaire approving continued confinement.

25) On 10-27-04, Plaintiff wrote to then GMCF Superintendent Greene a letter to be taken into consideration at his next review.

26) Plaintiff's sixth periodic review is also dated 10-6-04. The top portion of §A mirrors all previous reviews. The bottom portion of §A makes note Plaintiff submitted a letter dated 10-27-04 (i.e. ¶25) and is signed by the Committee member's on 12-6-04. Upon information and belief, since the top portion of §A mirrors all previous reviews, and even the date is the same from the previous review, it is proof of the rote, perfunctory fashion the document was just copied over and signed, and no meaningful review took place into the accuracy of the information relied upon to maintain Ad Seg placement. In § C, right above LeClaire's signature, it says "All of the above, including but not limited to your history of escape from custody and

assaultive behavior deems you a poor candidate for general population." Upon information and belief, this is further proof that Plaintiff is not being put on notice of the 'actual grounds' being relied upon to maintain Ad Seg placement, denying a liberty interest, thus he is being denied an opportuney to be heard and respond in a meaningful time and manner to whatever 'new' and/or 'changed' <u>actual reasons</u> Defendant LeClaire is allegedly[3] taking into consideration when signing off on these reviews. Upon information and belief, the controlling law here is *Hewitt v. Helms, supra* at 477; *Giano v. Selsky,* 2002 WL 31002803 at *7 (N.D.N.Y.) (inmate should be informed of the new reasons and given opportunity to respond).

27) Plaintiff's seventh review is dated 2-4-05. §A mirrors all previous reviews, suggesting the rote fashion they're being held. §C is signed by LeClaire.

28) §A of all previous reviews calls for "reasons why inmate was initially determined to be appropriate for Ad Seg." After that it says: "Deputy Inspector General recommends restricting inmate Proctor from General Population based upon his overall poor adjustment during this, and past incarcerations, etc. etc." Upon information and belief, Plaintiff thought the reason why he was initially determined to be appropriate for Ad Seg was actually the alleged independent fair and impartial Hearing Officer's decision, not the Deputy Inspector General? He believes this is another piece of the puzzle and more proof the initial placement decision was not made by the Hearing Officer, as the evidence suggests these reviews maintaining him in Ad Seg are a sham and fraud.

29) Plaintiff's eighth review is dated 4-1-05. §A of this review basically mirrors all previous reviews, except now the notation about the "Deputy Inspector General recommends

---

[3] Plaintiff used the word 'allegedly', because as depicted in footnote 2, he hopes to prove the evidence presented will show these reviews are meaningless, because the real reason he is being maintained in Ad Seg is to discipline him for previous misconduct allegations he was already found innocent on, retaliate against him, get revenge because he escaped on November 7, 1994, which was election day, and it was suggested, inferred and implied that then Governor Mario Cuomo lost the election because of it, making Defendant, his boss and his agents look bad.

restricting inmate Proctor from General Population," has been removed. §A now has Captain Charles F. Kelly, Jr. as the Committee Chairman for this review, when, as pointed out in ¶10 herein, he was the Hearing Officer at the initial Ad Seg placement hearing. §C has LeClaire's signature continuing confinement.

30) Plaintiff's ninth review is dated 6-7-05. §A finally no longer has the notation "the inmate has amassed 21 Separatees," in it. §A of this review also has Captain Charles F. Kelly Jr. as the Committee Chairman, when he was the initial Hearing Officer. §C has LeClaire ordering continued confinement.

31) The tenth review is dated 8-5-05. The top and bottom parts of §A mirror the previous review. The signature appearing over the 'Committee Chairman' position, again is Captain Charles F. Kelly, Jr. §B contains the same previously mentioned information, it just gets remixed into a different order. §C is signed by LeClaire denying release.

32) On 8-16-05, Plaintiff wrote then Commissioner Goord in regards to "my continuous existence in Ad Seg." He notified Mr. Goord about the Article 78 (i.e. *Proctor v. Goord;* see ¶7) he submitted which involves inaccurate records involving a 'toe-nail clipper' infraction not being expunged from his records after a judge ordered it expunged in 1996.

33) On 8-2805, Plaintiff wrote then GMCF Gary Greene in regards to a "letter for consideration/Admin Seg 60 day review." In this letter he pointed out Captain Kelly was the Ad Seg Hearing Officer and the Chairman of the Review Committee reviewing the matter. Among other issues, he also mentioned the Article 78 previously mentioned in ¶32. Since LeClaire saw the letter, he was again put on notice.

34) In a letter dated September 19, 2005, Defendant LeClaire wrote Plaintiff stating: "Commissioner Goord has asked me to respond to your letter to him regarding your Ad Seg

status." (i.e. ¶32). Since LeClaire acknowledged receipt of the letter, he was again placed on notice, yet denied all relief requested, when theoretically he had the power to release him.

35) Plaintiff's eleventh review is dated 10-5-05. The top part of §A mirrors the two previous reviews and another portion of §A reads in relevant part: "Proctor has submitted a letter dated 8-30-05, for the Central Office Committee to review." As depicted in ¶33 herein, Plaintiff's letter he submitted was dated 8-28-05, not 8-30-05, as this rote sham review claims. The §A Committee Chairman was again Charles F. Kelly. In §B, page 2, ¶4, it reads in relevant part: "The Committee considered a letter from inmate Proctor dated 9-28-05." As pointed out above, Plaintiff's letter was dated 8-28-05, not 8-30-05 or 9-28-05. Upon information and belief, this is further evidence of rote, perfunctory reviews.

36) In §B, page 2, ¶5 of the 10-5-05 review, the Committee makes comment to the use of expunged information brought to their attention in the ¶33 letter, saying in relevant part: "As we have repeatedly stated, unless administratively or judicially set aside, the committee has a right to relay on the findings made during the inmates Ad Seg hearing." §C then has LeClaire's signature continuing Ad Seg.

37) Upon information and belief, the review statement quoted in ¶36, is proof LeClaire was repeatedly placed on notice of the previously expunged information. What is shocking about the ¶36 Committee statement, is the expunged information was already judicially set aside in 1996, prior to the original Ad Seg placement hearing (see *Proctor v. Coombe,* 233 A.D.2d 648 [3rd Dept. 1996]), and again after it was used for almost two years to maintain Plaintiff in Ad Seg (see *Proctor v. Goord,* 801 N.Y.S.2d 517 [Sup. Ct. 2005]). Note: The *Proctor v. Goord* decision was made the month prior to the review statement mentioned in ¶36. Also note: The *Proctor v. Goord* decision ordered Plaintiff's records expunged, yet as shown in Grievance CL-

59286-09, dated 7-29-09, the previously ordered expunged information is still in Plaintiff's records in 2009, and being inappropriately relied upon to maintain Ad Seg. Upon information and belief, this deserves 'collateral estoppel' '*res judicata*' effect, 28 U.S.C. §1738. (See Grievance dated 7-29-09, Complaint Exhibit 'A').

38) Upon information and belief, the ¶36 Review Committee statement is further evidence Defendant LeClaire is not reviewing 'then available' evidence that was available at the point the reviews occurred, which he is obligated to do. Had he taken into consideration 'then available' evidence, he would have been aware much of it was inaccurate or Plaintiff was already found innocent of it.

39) Upon information and belief, the controlling law here is *Giano v. Kelly,* 869 F.Supp. 143, 148-152 (W.D.N.Y. 1994); *Childs v. Pellegrin,* 822 F.2d 1382, 1388-89 (6th Cir. 1988) ("Keeping a prisoner in Ad Seg based on misconduct charge of which he has been cleared, denies due process"); *Howard v. Coughlin,* 212 A.D.2d 852 [1995], *lv. Denied,* 85 N.Y.2d 812 [1995].

40) Plaintiff's twelfth review is dated 12-5-05. The top and bottom parts of §A mirror the information in the three (3) previous reviews. §A is also signed by Charles F. Kelly, the Committee Chairman. §B has 'murder,' 'robbery' and 'possession of a weapon' as 'changed' reasons why he is being maintained in Ad Seg (see ¶14 for details how Plaintiff was prejudiced because of this). §C has Defendant LeClaire approving confinement.

41) Plaintiff's thirteenth review is dated 2-8-06. The top and bottom parts of §A mirror the information on the four (4) previous reviews. §A also is signed by Captain Kelly, as Committee Chairman, when he was the Hearing Officer. §B, page 1 has the 'changed' reason

for maintaining Ad Seg (i.e. murder) previously discussed in ¶14 herein. §C has LeClaire authorizing confinement.

42) Plaintiff's fourteenth review is dated April 4th, 2006. §A of this review mirrors the five (5) previous reviews. §A also is signed by Charles Kelly, as Committee Chairman. §B, page 1 now mentions the 'changed' reasons Plaintiff is being maintained in Ad Seg as 'several robberies' and 'murder.' See previous discussion in ¶14 herein how he is prejudiced by this illegal policy or practice. §B, page 2, ¶2 says in relevant part: "He has accumulated in excess of 30 disciplinary dispositions for acts such as, assaults on staff..." The word "assaults" is plural, and its claimed these assaults derived from disciplinary dispositions. A review of Plaintiff's disciplinary history will show that is a lie. He only has one such assault that derived from one Tier III. Upon information and belief, this is further evidence of rote, perfunctory reviews. §C has LeClaire approving continued confinement.

43) The fifteenth review is dated 6-1-06. §A mirrors the six (6) previous reviews and still has Charles Kelly as Committee Chairman. §B also has the 'changed' reasons (i.e. murder, several robberies) previously discussed in ¶14. §B, page 2, ¶2 says in relevant part: "his disciplinary history is extensive including numerous dispositions for assaults on staff..." As pointed out in ¶42, that is a lie. §C has LeClaire again rubber-stamping the review.

44) In all the reviews Charles F. Kelly was chairman of the Review Committee for, §A has the quoted remark, "has to much time to do to be recaptured." This statement is fabricated and was strongly disputed to Charles F. Kelly when he was the Ad Seg placement Hearing Officer. It is said the statement derived from an un-signed 'Interdepartmental Communication' that does not even meet the 'some reliable evidence' standard of the Second Circuit. §C on all

the mentioned reviews have Defendant LeClaire authorizing continued confinement, despite the blatant evidence the reviews are denying due process.

45) Captain Charles Kelly was the Hearing Officer as well as the Committee Chairman for eight different reviews, spanning a 14 month time period (see ¶¶29-31, 33, 35, 40-44). Upon information and belief; "It has been held, that prison officer who invokes the disciplinary process, should not sit on the committee reviewing the matter" *Miller v. Twomey,* 479 F.2d 701, 716 (7th Cir. 1973); *Merritt v. Delos Santos,* 721 F.2d 598, 600-01 (7th Cir. 1983); *Finney v. Arkansas Bd. Of Corr.,* 505 F.2d 194, 208 (8th Cir. 1974).

46) The sixteenth review is dated 8-1-06. The top part of §A mirrors the seven (7) previous reviews, but now does not have Charles Kelly's signature as Committee Chairman. §B, page 2, ¶1 also has the 'changed' reasons (i.e. murder, robbery and possession of a weapon) that Plaintiff was never allowed to be heard on until after they were already relied upon as discussed in ¶14 herein, again showing a discriminatory policy or practice of denying Plaintiff a 'right to be heard,' as well as 'notice' prior to the formal jurisdictional decision is made to deny Liberty. Above §C, where LeClaire signed, it says: "All the above including, but not limited to your history of escape from both an opening and N.Y.S.D.O.C.S. mandates your retention in Ad Seg." Upon information and belief, the same argument discussed at length in ¶26 herein, also applies to this review.

47) Upon information and belief, the reviews that have been maintaining Plaintiff in Ad Seg from the very first review (i.e. ¶¶13-14, until present), have been meaningless and performed merely as a formality and are a pretext by Defendant LeClaire to indefinitely confine him to Ad Seg. Plaintiff believes the facts presented in this entire complaint, show specific and related instances of discrimination are being permitted by Defendant LeClaire to continue unremedied

for so long as to amount to a discriminatory policy or practice and Plaintiff believes the "Continuing Violation" Doctrine applies in this case, and he is "entitled to have a court consider all relevant actions taken pursuant to defendant's discriminatory policy or practice, including those that would otherwise be time barred." *Jackson v. New York State,* 381 F.Supp.2d 80, 87-88 (N.D.N.Y. 2005)(Quoting 2nd Cir. Cases); See also *Shomo v. City of New York,* 579 F.3d 176, 181-182 (2nd Cir. 2009).

48) As pointed out in ¶¶36-38, there is evidence that court ordered expunged information was not expunged from Plaintiff's records, and was in fact continued to be relied upon to maintain him in Ad Seg, even after he continuously placed Defendant on notice the information was expunged. There is evidence Defendant LeClaire "actively misled" Plaintiff into believing this "previously ordered expunged" information was not in his records (e.g. see ¶¶55, 68), when it certainly was (see Complaint Exhibit 'A'). Upon information and belief, LeClaire engaged in fraudulent concealment of facts that would alert Plaintiff to the existence of a cause of action and is not entitled to benefit from the ignorance he perpetuated on Plaintiff, and he should be "equitably estopped" from raising a statute of~limitations~defense. See *Bodner v. Banque Paribas,* 114 F.Supp.2d 117, 135 (E.D.N.Y. 2000) (quoting 2nd Cir. Cases).

49) Upon information and belief, an inadvertent denial of a periodic review does not give rise to a constitutional claim in its own right. So Plaintiff has to rely on the "Continuing Violation" Doctrine to show facts over a period of time of Defendant's discriminatory policy or practice of denying Plaintiff 'notice' and a 'right to be heard' in a meaningful time and an meaningful manner on 'new' and/or 'changed' reasons for maintaining Ad Seg, until approximately 60 days after the formal jurisdictional decision was already made to deny liberty for an additional 60 days. "Specific and related instances of discrimination are permitted by

Defendant to continue unremedied for so long as to amount to a discriminatory policy or practice." *Cornwell v. Robinson,* 23 F.3d 694, 704 (2nd Cir. 1994). If for some reason this Court does not recognize Plaintiff's believed right to allege facts are going back further than three years from date this complaint was filed, then the facts that do fall within the three year limit on these on-going due process violations/sham reviews, start now;

50) Plaintiff's seventeenth review is dated 10-10-06. §A mirrors §A of the previous review, and says: "subject has stated that he 'has to much time to do to be recaptured." This statement was previously addressed in ¶44. §A also says "Proctor has minimal incidents 'since' his placement in Ad Seg at this facility. However, these reports consist of incidents involving harassment, threats, unhygienic acts, lewd conduct and contraband." This is evidence Plaintiff continues remain in Ad Seg as a result of 'new' reasons, and he never received <u>notice</u> these 'new' reasons were being relied upon, until after the formal jurisdictional decision has already been made to deny him liberty. Also, he was not afforded a <u>right to be heard</u> in a meaningful time and meaningful manner, except in a periodic review held 60 days <u>after</u> the formal jurisdictional decision was already made utilizing this 'new' information to deny liberty. Upon information and belief, that is further evidence of an on-going discriminatory policy or practice. §B, page 2, ¶2 says: "Proctor is currently serving a sentence for murder." This was already addressed in ¶14 herein.

51) The eighteenth review is dated 12-11-06. §A has the same information as two previous reviews. The same facts in ¶50 apply to this review. §B, page 1 says: "His current term of 36 years to life is for the crimes of murder, robbery, possession of a weapon." This and similar statements regarding 'changed' reasons for maintaining Ad Seg, have previously been addressed, but see ¶14 herein for full picture.

52) The nineteenth review is dated 2-2-07. The relevant portions of §A have the exact information discussed in ¶50. §B, page 1 has the same 'changed' crimes addressed fully in ¶14. §C has Defendant LeClaire approving continued confinement.

53) The twentieth review is dated 4-11-07. §A mirrors previous review. §B, page 2, contains the fabricated statement discussed in ¶44, as well as additional statements alleged to have derived from the same memo. Three items mentioned in §B, page 2 and relied upon to maintain Ad Seg, are not true. #1) "Proctor removed his handcuffs while confined to his cell" and #2) "Proctor was found to have a razor secreted in his rectum" and #3) "Proctor set fire to his shielded cell." Plaintiff was already cleared of these misconduct allegations at the time of their alleged occurrence, as his disciplinary history is clear proof of. The "Proctor set fire to his shielded cell" allegation was thrown out in October 1995, at a due process hearing held at Auburn Correctional Facility by a Captain Rourke. Had LeClaire considered "then available" evidence at the time of the review, he would be aware of this. Upon information and belief, the controlling law here can be found at ¶¶12, 39, and the above deserves "conclusive effect to the quasi-judicial determinations of the administrative agencies," *res judicata*/collateral estoppel applies. Further evidence of meaningless reviews that are a pretext for indefinite confinement? §C has LeClaire's signature.

54) On 4-30-07, Plaintiff wrote a letter to then GMCF Superintendent Darwin LeClair, regarding "Ad Seg 60 day review letter to be forwarded to Central Office Sham Review Committee."

55) The twenty-first review is dated 6-7-07, §A mirrors previous two reviews. §B, page 2, ¶3 acknowledges receipt of ¶54 letter. §B, page 2, ¶4 says in part: "The information referenced in this and the prior review were based upon facts derived from inmate Proctor's Ad

Seg hearing. Unless that hearing is overturned, this Committee can rely upon said facts. It should be noted that this Committee in no way considered an alleged incident where the resulting disciplinary determination had been expunged." Upon information and belief, the above statement says LeClaire will not take into consideration new relevant "then available" facts at the time each review occurs, as he is obligated to do, and he is relying upon the placement hearing decision (despite blatant obvious facts indicating it is inaccurate) unless that gets overturned. Also, the above statement about "no way considered an alleged incident where the resulting disciplinary determination had been expunged," rings hollow, because as shown in Exhibit 'A' of this Complaint, no such Expungment Order was received, leaving the expunged information in all records. Also see ¶53 for more evidence why the statement rings hollow. §C has Defendant LeClaire's signature.

56) While at GMCF, Plaintiff wrote a Grievance dated 7-27-07, which was given Grievance Number 43, 455-07. The Grievance was about the periodic Ad Seg reviews not being meaningful (see Complaint, Exhibit 'B').

57) The twenty-second review is dated 8-6-07. The top part of §A mirrors §A of previous review as well as has additional opinions not previously mentioned. §B, page 1 mentions crimes not an original reason for justification to place Plaintiff in Ad Seg (i.e. murder, robbery, possession of a weapon) but now the review morphed itself into mentioning how many counts of crimes its said he committed. §C is again signed by LeClaire.

58) Upon information and belief, ¶¶13-14, 16, 18, 40-43, 46, 51 and 57 could have been raised and adjudicated in the original Ad Seg placement hearing, but were not. *Res Judicata* applies (*Burgess v. Goord*, 285 A.D.2d 753, 755 [2001]). ¶¶15, 19, 32, 37, 53 and 90 deserve "conclusive effect to the quasi-judicial determinations of administrative agencies" (*Ryan v. New*

*York Tel. Co.,* 62 N.Y.2d 494, 499 [1984]; *Hernandez v. Selsky,* 5 A.D.3d 882 (3rd Dept. 2004)).

¶¶15, 19, 32, 37 and 53 deserve 'collateral estoppel' – '*res judicata*' effect (*Burgos v. Hopkins,* 14 F.3d 787, 790-792 (2nd Cir. 1994)); 28 U.S.C. §1738.

59) The twenty-third review is dated 10-8-07. §A mirrors §A of the previous review. §B, page 2, also says in parts: "Proctor removed his handcuffs. The handcuffs were never found." §B page 2 also says: "Proctor is reported to have said, that he "wanted to be more famous," if he escaped he would be "one bad dude," and that he had "too much time to do to be recaptured." All quoted remarks, excluding the handcuff remarks, are from the same previously mentioned fabricated memo addressed in ¶44. §C is signed by Defendant LeClaire.

60) In a letter dated 9-25-07, Plaintiff wrote Commissioner Brian Fischer in regards to his Ad Seg status and questioned the need for continued SHU placement with no privileges.

61) In a letter dated October 29, 2007, Defendant LeClaire wrote Plaintiff stating Commissioner Fischer asked him respond in regards to his Ad Seg status. LeClaire wrote in part: "All pertinent information, including your letter, will be included as part of the review process during the next meeting of the Ad Seg Review Committee."

62) The twenty-fourth review is dated 12-4-07. §A contains the same information as the two previous reviews. §B, page 1 contains the same 'changed' crime reasons for Ad Seg previously addressed in ¶14. When Plaintiff submits letters and objections, the committee usually gives the superficial resemblance the reviews are meaningful by briefly addressing them. Yet the letter dated 9-25-07 (see ¶60) was not considered or included at the Review Committee as Defendant's LeClaire's letter of October 29, 2007 (see ¶61) said it would be. Upon information and belief, that is proof LeClaire never included it, as he was obligated to do, denying Plaintiff his right to be heard, and suggesting sham, perfunctory and meaningless

reviews. It is believed the controlling law here is *Giano v. Selsky,* 2002 WL 31002803, at *7 (N.D.N.Y. Sept. 5, 2002)(Kahn, J.). §C has LeClaire's signature.

63) In a letter dated Feb. 29, 2008, Commissioner Fischer wrote Plaintiff stating in relevant part: "This is in response to your letter of Sept. 25, 2007" (i.e. ¶60) and "your disciplinary record, and your attempt to escape, do not suggest that placement in general population is appropriate, your claims to the contrary not withstanding."

64) Defendant LeClaire allegedly referred Plaintiff's letter to the next Ad Seg Review Committee (see ¶61). The Review Committee makes no remark (as they usually do) that any such letter was included or considered (see ¶62). The Review Committee members are all subordinate to Commissioner Fischer. Defendant LeClaire is a subordinate to Commissioner Fischer, and Commissioner Fischer has stated Plaintiff's "placement in general population is not appropriate" (see ¶63). Upon information and belief, at the very least, the above information in ¶¶60-64, indicate that any reviews subsequent to February 29, 2008, when Commissioner Fischer wrote that letter, were a sham, not meaningful, perfunctory and being used by LeClaire as a pretext for indefinite confinement with deliberate indifference to Plaintiff's liberty. LeClaire is only following his boss' wishes at that point, as is the review committee. This is evidence of, at the very least, "system-wide" decision-making.

65) The boss has indicated he wants a prisoner maintained in Ad Seg, yet that boss designated a subordinate to the final stage of the review process which determines whether that prisoner stays in Ad Seg. Upon information and belief, that is an inherent conflict of interest and the controlling law that covers that scenario is *McClary v. Coughlin,* 87 F.Supp.2d 205, 208-213 *n.7* (W.D.N.Y. 2000).

66) The twenty-fifth review is dated 2-6-08. §A mirrors the previous three reviews. §B, page 1 contains the same 'change' reasons (i.e. crimes) being used to continue Ad Seg, mostly already addressed in ¶14. §C above LeClaire's signature, it says "Based on all available information, _including, but not limited to the above_, your retention in Ad Seg is mandatory at this time." Upon information and belief, the underlined portion indicates there is information being considered to maintain Ad Seg, that Plaintiff is not being put on notice of, and an opportunity to be heard on the "actual grounds" being relied upon. This is denying him an explanation of the 'actual ground' for termination of a liberty interest and an opportunity to refute the allegations. This is denying the most fundamental right (i.e. notice and right to be heard).

67) On 3-4-08, Plaintiff wrote GMCF Superintendent David Rock with a "Ad Seg '60 day Review' letter."

68) The twenty-sixth review is dated 4-9-08. §A is the same, §B has the same 'changed' crimes information. §B, page 2, ¶2 says in part: "The Committee is in receipt of a letter from Inmate Proctor" (i.e. ¶67). It also says: "Inmate Proctor further states that the committee improperly considers unusual incident and tier reports containing expunged material, as well as incidents he claims to not be guilty of. This Committee states that material that is expunged is not available for our review, thus it is not considered." §C is signed by LeClaire. The previously court ordered expunged information was _not_ expunged as ORDERED and IS available for review (see Amended Complaint, Exhibit 'A').

69) Even after Plaintiff continuously placed Defendant LeClaire on notice the information was supposed to be expunged (see ¶¶15, 17, 19, 32-34, 36-39, 48, 55), or readily

available records would prove he was already found innocent of unusual incident or tier reports (see ¶53), ¶¶55 and 68 are evidence LeClaire "actively misled" Plaintiff into believing this "previously ordered expunged" information was not in his records, when it certainly was/is (see Amended Complaint, Exhibit 'A'). Upon information and belief, LeClaire engaged in fraudulent concealment of facts that would alert Plaintiff to the existence of a cause of action, and he isnot entitled to benefit from the ignorance he perpetuated on Plaintiff, and he should be "equitably estopped" from raising a statute of limitations defense (see ¶48 for Supporting Law).

70) Furthermore, §B, page 2, ¶2 states in part: "If inmate Proctor feels that his record contains any inaccurate material, he is free to challenge such records pursuant to 7 N.Y.C.R.R. §5.50." What is so shocking about this statement is, when Plaintiff did bring an Article §78 pursuant to 7 N.Y.C.R.R. §5.50 to have inaccurate information expunged from his records, he prevailed (see *Proctor v. Goord, supra*). Yet as pointed out in ¶37, this information was still being relied upon to maintain Ad Seg placement, and as pointed out in the Amended Complaint, Exhibit 'A', it was never expunged.

71) The twenty-seventh review is dated 6-9-08. §A is the same; §B has the same 'changed' crimes information. §B, page 2, ¶2 says, in parts: "During his incarceration, Proctor has been involved in many unusual incidents, involving assaults on staff" and "he has also been involved in 34 Tier II and Tier III incidents, involving…Assaults on staff." In both quoted phrases, the word "Assaults" is plural, and it is claimed these assaults derived from 'unusual incidents/Tier II and Tier III incidents." As pointed out in ¶¶42-43, that is a lie. LeClaire still relied upon §§A-B as an excuse to continue Ad Seg, see §C.

72) The twenty-eighth review is dated 8-7-08. §A mirrors previous reviews. §B has the same 'changed' crime reasons discussed in ¶14. Above §C where LeClaire signed his name, it says: "After reviewing all available information, <u>including all of the above,</u> your retention in Ad Seg is still needed at this time." It is believed the quoted statement suggests there is additional evidence LeClaire is relying upon that is not included in this review, denying Plaintiff 'notice.'

73) The twenty-ninth review is dated 10-7-08. §A is the same; §B has the same crimes that are a 'changed' reason. §B also has the same word 'Assaults' (plural) previously discussed in ¶¶42-43 and 71, which is a lie. That did not stop LeClaire from relying upon it. See §C.

74) For at least two years of reviews at GMCF (i.e. 2007-2008) Plaintiff's counselor was Mr. Brian McAllister. The same person who signed his name many times above the line that has 'Guidance Counselor' below it at the bottom of §A on reviews. Mr. McAllister informed him that whomever is the §A Committee Chairman, fills out all three parts of §A, then just asks whatever counselor and sergeant working the box that day to sign above the lines at the bottom of §A. He informed Plaintiff he never saw any letters he wrote for consideration, nor sat down with any security supervisor and/or committee chairman to discuss his Ad Seg status. Upon information and belief, this is evidence of sham, fraudulent, pretext reviews, held in a rote and perfunctory manner.

75) On 10-28-08, Plaintiff wrote to Governor David Paterson, in reference to: "Request for a pardon of my past iniquities and release from an arbitrary sentence of Ad Seg and any other relief you deem just and proper."

76) On 12-3-08, Plaintiff wrote to Mr. S. Racette, the Deputy of Security at CCF. The letter was titled "My Admin Seg 60 Day Periodic Review."

77) The thirtieth review is dated 12-9-08. Despite now being in a different prison, the top portion of §A mirrors the previous reviews from the former prison. It is believed this suggests rote reviews. §B, page 2, ¶2 acknowledges receipt of Plaintiff's letter (i.e. ¶76). §B, as with the information contained in §B of all reviews, is the same issues, subjects, allegations, lies, twisted opinions and rote manner of answering these reviews. As discussed in ¶72, §C is signed by LeClaire saying: "All available information, including the above noted review etc." It is believed this suggests other evidence is being considered that Plaintiff was not placed on notice about.

78) The thirty-first review is dated 2-9-09. The top of §A mirrors previous reviews. §B, page 2, ¶2 acknowledges receipt of the ¶75 letter as well as the ¶76 letter that allegedly was already considered (see ¶77). §B, page 2, ¶5 says: "If inmate Proctor feels his record has any inaccurate material, he is free to challenge it pursuant to 7 N.Y.C.R.R. §5.50." As pointed out in ¶70, he did that, prevailed, yet records were not expunged. §C has LeClaire's signature.

79) On 3-11-09, Pliantiff wrote a letter to Mr. S. Racette, the Deputy of Security at CCF. The letter was titled "Administrative Segregation 60 day Periodic Review."

80) The thirty-second review is dated 4-9-09. Again, top of §A mirrors prior review. §B, page 1 again notes the crimes continuously mentioned herein, and page 2 acknowledges receipt of the ¶79 letter. Page 2 also contains the same recycled information being relied upon in all reviews as a pretext for indefinite confinement. §C is signed by LeClaire.

81) On 5-20-09, Plaintiff wrote a grievance at CCF in regards to his Ad Seg reviews not being meaningful, which was given Grievance Number CL-59069-09, and is stamped as filed June 1, 2009. On June 2, 2009, it was denied. On 6-6-09, he appealed to the Superintendent.

On 6-15-09, the appeal was denied. On 6-17-09, he wrote an appeal statement to the Central Office Review Committee ("CORC"). On 7-29-09, CORC denied all relief (see Exhausted Grievance dated 5-20-09, Amended Complaint, Exhibit 'C').

82) The thirty-third review is dated 6-9-09. Again, the top of §A mirrors previous reviews. §B, page 2 has the same 'changed' crimes. §B, page 2, ¶3 has the same erroneous information discussed at length in ¶¶42-43, 71 and 73 involving the plural word 'Assaults' when there is only one such assault deriving from Unusual Incident or Tier III Reports. It is believed this is evidence of rote, perfunctory, meaningless reviews. §C, above LeClaire's signature, has the notation "upon review of all information, including but not limited to the above data, your continued retention in Ad Seg is needed at this time." The underlined above mirrors the underlined of ¶66 herein, and the same argument belief in ¶66 also applies here. It is believed the controlling law is *Hewitt, supra* 459 U.S. at 477; *Giano v. Selsky,* 2002 WL 31002803 at *7 (N.D.N.Y.) (inmate should be informed of the new reasons and given an opportunity to respond).

83) On 6-29-09, Plaintiff wrote Deputy Superintendent Racette titled "Ad Seg '60 Day Periodic Review.'" This letter was in response to the review in ¶82 and addresses objection of how these reviews are a sham.

84) On 7-29-09, Plaintiff had Grievance Number CL-59286-09, filed at CCF. The Grievance was written because his records still contained reference to a 'sharpened nail clipper' ordered expunged in 2005, (see *Proctor v. Goord, supra*) which it is believed was being relied upon to maintain Ad Seg. He requested the reference be removed from all parole and institutional records. The Grievance was denied, but most importantly within the body of that denial, it was admitted that his records were never expunged and that no expungement order was

ever received. Plaintiff exhausted all administrative remedies (see Exhausted Grievance CL-59286-09 dated 7-29-09, Amended Complaint, Exhibit 'A').

85) Upon information and belief, Plaintiff's prison sentence will be extended because of his confinement in Ad Seg. In order to receive a favorable parole decision, he is required to take various therapeutic self-help programs (e.g. Anger Management "ART" and Drug and Alcohol Treatment "ASAT") which he can not participate in, because these required programs are not available to Ad Seg persons housed in the box.

86) On 9-3-09, Plaintiff wrote Deputy Superintendent S. Racette a "letter for consideration for Ad Seg 60 day Periodic Review," which is nine pages long.

87) In late November 2008, Plaintiff came to CCF. When he found out Deputy Racette was the Chairman of the Ad Seg Committee on §A of all reviews. Plaintiff asked Mr. Racette such questions as; "How long will I be in Ad Seg?" and "will I ever be released from Ad Seg?" and "will I ever be released from Ad Seg?" Mr. Racette would answer; "you know I don't have anything to do with that, Albany makes all the decisions in your case, I just fill out the one section every month, get the ball rolling, and send the review to Albany at designated times." It is believed this is evidence of rote, perfunctory and meaningless reviews.

88) The thirty-fourth review is dated 8-10-09. §B, page 2, ¶1 says "also while housed at the Sullivan Correctional Facility, inmate Proctor was found to have a razor secreted in his rectum." This same statement appears on the Ad Seg original recommendation. The fact that it does not appear on his disciplinary history print-out, should be clear proof he was found innocent of any wrong doing, yet for all these years LeClaire still relied upon it to maintain Ad Seg. It is

believed keeping a prisoner in Ad Seg based on misconduct he has been cleared on, denies due process (e.g. see ¶39). Also see ¶53, which also mentions the razor.

89) §B, page 3 says in part: "This Committee is specifically not considering inmate Proctor's alleged possession of a sharpened nail clipper or his removal of handcuffs in 1995." As pointed out in Exhibit 'A' herein, the sharpened nail clipper was not expunged, even at the time of this review. So the above statement rings hollow.

90) As for the statement "Committee is specifically not considering his removal of handcuffs in 1995," this reference to the handcuffs appears in the Ad Seg recommendation and has been relied upon for years as justification to maintain Ad Seg. See ¶¶53 and 59 for example. Plaintiff was cleared of any wrong doing at the time of the alleged incident. It is believed Defendant LeClaire continuously relied upon this, and previously mentioned cleared misconduct allegations, for years, and ignored readily accessible "then available" evidence, which would have cleared Plaintiff. More proof the reviews are meaningless and a pretext for indefinite confinement? It is believed *res judicata* / collateral estoppel applies (see ¶58 herein). §C is signed by LeClaire.

91) Upon information and belief, the motivation for Defendant LeClaire's decision to maintain Plaintiff in Ad Seg is to discipline him on misconduct charges he was previously found innocent on, but never cleared from his records, as well as to retaliate and seek revenge upon Plaintiff for escaping on election day (allegedly causing then Governor Cuomo to lose the election and making LeClaire, his boss and agents look bad), thus the procedures being used to maintain Ad Seg are not adequate to safeguard Plaintiff's liberty interests in avoiding Ad Seg and receive meaningful periodic reviews. They are only a pretext for indefinite confinement.

92) After Plaintiff was placed in Ad Seg in December 2003, he was told by several GMCF staff (e.g. Deputy Superintendents Potter and Carpenter, former Superintendents Greene and LaClair) that the word is he will remain in Ad Seg for the rest of his sentence. The reason continuously mentioned was his escape on election day, causing embarrassment for the Commissioner, the Department and the Governor.

93) In 2007 and 2008, Assistant Commissioner Diane Van Buren, visited GMCF, where Plaintiff resided in F-Block, 3 cell. Some of the dates are 2-12-07, 4-24-07, 10-31-07 and 11-26-07. On three occasions, she visited CCF in 2009 (i.e. 7-8-09, 9-2 or 9-3-09 and 10-15-09). On all noted dates she spoke to Plaintiff. Each time they spoke, Plaintiff requested information on his Ad Seg status (e.g. when will he be released/will he receive privileges?)

94) At least four occasions prior to Ms. Van Buren's 10-15-09 visit to CCF, and in response to Plaintiff's inquiries about how long he will be in Ad Seg, Ms. Van Buren told him: "I don't know if you will ever get out. I was in the office that day. You pissed a lot of people off. They think the Governor lost the election because of the escape that day."

95) On or about 7-8-09, Mr. Anthony Annucci, Executive Deputy Commissioner of DOCS visited Plaintiff at CCF, Unit #14, with Assistant Commissioner Diane Van Buren. Plaintiff was speaking to Mr. Annucci for several minutes at 46 cell about his Ad Seg status, receiving privileges and alternatives to the box, when Ms. Van Buren walked up and inserted a comment that apparently fit the colloquy at the time, stating: "Yeah, and the Governor probably lost the election because of you."

96) On 10-15-09, Ms. Van Buren made a round at CCF with Superintendent D. Artus and several deputies. She stopped at his cell 36, and after the same general questions about his

Ad Seg status, Plaintiff informed her she has implied on several occasions that his placement in Ad Seg likely will not change, because it is believed the escape on election day cause then Governor Cuomo to lose the election, and he intends to use that in an affidavit/lawsuit against LeClaire to show the reviews are a sham. Ms. Van Buren said: "I was being sarcastic when I said that!" Superintendent Artus then said: "What are you saying she said now?" Plaintiff then said: "I'm not saying she said anything. Ask her yourself if she said it." Ms. Van Buren then told Mr. Artus: "I told him he's responsible for the Governor losing the election because of the escape!" She then asked Plaintiff not to put her into it, that she was only being sarcastic when she said that.

97) Upon information and belief, Ms. Van Buren was not being sarcastic when she made the above quoted statements. They were made at different prisons, over a three year period.

98) No committee member ever recommended Plaintiff be released from Ad Seg in all these years, nor has any one member disagreed with any other member in all these years. Six years is a very long time for any situation to remain exactly the same. One might expect the passage of so much time to have some impact on his situation. There is no indication how much longer he will remain in Ad Seg (except indefinitely) or what he could do to hasten his release. Over time, reasons, which would have justified early detention in Ad Seg, were applied in a rote fashion, when experience should have led LeClaire to release him.

99) Upon information and belief, Plaintiff would not be maintained in Ad Seg were his reviews meaningful. Since LeClaire made proof impossible all these years with rote, perfunctory, sham, fraudulent and meaningless periodic reviews, it is now his burden to show Plaintiff would have stayed in Ad Seg, had there been no violations of procedural due process

(*Patterson v. Coughlin,* 905 F.2d 564, 570 (2nd Cir. 1990) ("we conclude that even to an issue on which the plaintiff normally has the burden of proof, it would be inappropriate to rule the defendants should prevail where they have made proof impossible"). The standard is not what defendant would have decided, it is what an objective, neutral decision maker would have decided.

## EXHAUSTION OF LEGAL REMEDIES

100) Plaintiff **PATRICK PROCTOR,** used the Grievance procedure available at GMCF (see ¶56 and Amended Complaint Exhibit 'B') and CCF (See ¶81 and Amended Complaint Exhibit "C") to try to resolve the problems mentioned herein. He exhausted all his administrative remedies.

## LEGAL CLAIMS

101) Plaintiff re-alleges and incorporates by reference paragraphs 1-100, for the purpose of the following causes of action;

102) The actions of Defendant **LUCIEN J. LECLAIRE, JR.,** where he failed to provide meaningful periodic reviews of Plaintiff **PATRICK PROCTOR'S** Administrative Segregation status, and maintains him in the Special Housing Unit using sham, perfunctory and meaningless periodic reviews in order to indefinitely confine him to Administrative Segregation, (the due process violations are on-going from 2-23-04 to present) which caused atypical and significant hardship and constitutes a deliberate indifference to Plaintiff's liberty and violates his due process/due process clause of the Fourteenth Amendment, U.S.C.A. Const. Amend. 14.

103) The actions of Defendant **LUCIEN J. LECLAIRE, JR.,** where he is maintaining Plaintiff **PATRICK PROCTOR** in Administrative Segregation using a discriminatory policy or practice of denying Plaintiff "NOTICE" and a "RIGHT TO BE HEARD" in a meaningful time and meaningful manner on all periodic reviews, but more specifically on reviews containing 'NEW' and/or 'CHANGED' reasons for maintaining Administrative Segregation, until approximately sixty (60) days <u>after</u> the formal jurisdictional decision was already made to deny liberty for an additional 60 days utilizing those reasons, (to wit: from the 2-23-04 review, to present) "specific and related instances of discrimination are being permitted by Defendant **LECLAIRE** to continue un-remedied for so long, as to amount to a discriminatory policy or practice which caused atypical and significant hardship and constitutes deliberate indifference to Plaintiff's liberty and violates the due process clause of the Fourteenth Amendment, U.S.C.A. Const. Amend. 14.

104) The Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of the Defendant unless this Court grants the declaratory and injunctive relief, which Plaintiff seeks.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully prays that this Court enter judgment granting Plaintiff:

I.  A declaration that the acts and omissions described herein violates Plaintiff's rights under the Constitution and Laws of the United States, and;

II.  A permanent injunction ordering Defendant **LUCIEN J. LECLAIRE JR.,** and his agents to:

A) Release Plaintiff **PATRICK PROCTOR** from Administrative Segregation and immediately place him in general population with the full restoration of all entitled rights and privileges, and;

B) Expunge all references of all the allegations mentioned in the Administrative Segregation Recommendation from Plaintiff's institutional, departmental and parole records, and;

C) Prohibit Defendant, **LUCIEN J. LECLARE JR.,** and all other present and future employees of the Department of Correctional Services from using any of the allegations mentioned in the Administrative Segregation Recommendation against Plaintiff for any purpose at any time in the future, and;

D) Prohibit Defendant **LUCIEN J. LECLAIRE, JR.,** and all other present and future employees for the Department of Corrections from housing Administrative Segregation prisoners under conditions with no privileges, in the same Special Housing Unit that houses disciplinary segregated prisoners, and;

E) Immediately place Plaintiff in an area where he can obtain the programs required by the parole board, since the state and federal constitutions mandated rehabilitation for any sentence which contains imprisonment, and;

III.  Compensatory damages against Defendant **LUCIEN J. LECLAIRE JR.,** in the amount of two hundred fifty dollars ($250.00) per day for each day spent in Administrative Segregation, and;

IV.   Punitive damages against Defendant **LUCIEN J. LECLAIRE JR.,** to be determined at trial; and

V.   A jury trial on all issues triable by jury, and;

VI.   Award Plaintiff costs and disbursements in this action, and;

VII.   Award Plaintiff reasonable attorney fees, and;

VIII.   Plaintiff brings this action as a *pro se* litigant, warranting the Court to construe the complaint liberally, such that the strongest possible argument is raised *Soto v. Walker,* 44 F.3d 169, 173 (2nd Cir. 1995); *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795 (2nd Cir. 1999) (*per curiam*) ("Certainly the court should not dismiss without granting leave to amend at least once where a liberal reading of the '*pro se*' complaint gives any indication that a valid claim might be stated"); *Wynder v. McMahon,* 360 F.3d 73, 79 (2nd Cir. 2004) ("Technical pleading irregularities may be excused as long as they neither undermine the purpose of notice pleading nor prejudice the adverse party"), and;

IX.   Any additional relief this Court deems just, proper and equitable.

Dated: March          , 2010
Dannemora, New York

_Patrick Proctor_
**PATRICK PROCTOR,** *Pro se*
89-A-9763
Clinton Correctional Facility
P.O. Box 2001
Dannemora, New York 12929

cc:   file
To:   Adrienne J. Kerwin
Assistant Attorney General, of Counsel
Office of the Attorney General
The Capitol
Albany, New York 12224-0341

## **VERIFICATION**

I have read the forgoing Amended Complaint and hereby verify the matters alleged therein are true, except as to matters alleged on information and belief, and as to those, I believe them to be true. Pursuant to 28 U.S.C. §1746, I certify under penalty of perjury that the foregoing is true and correct.

Executed at Dannemora, New York, on *March*          , 2010.

*Patrick Proctor*
**PATRICK PROCTOR,** *Pro se*

Exhibit `A`

Grievance No.
CL-59286-09

# INMATE GRIEVANCE COMPLAINT

29

Date **7/29/09**

Name **P. Proctor**      Dept. No.   **89-A-9763**      Housing Unit   **SHU-46**

Program      AM      PM

(Please Print or Type — This form must be filed within 21 calendar days of Grievance Incident)*

**Description of Problem:** (Please make as brief as possible)

On 7/8/09, I sent Ms. B. Jarvis, IRC, F.O.I.L. Officer, a disbursement for $2.00 to cover the cost of my disciplinary history and my Ad Seg. recommendation of 12/8/03, today 7/23/09, I received these items legal mail (I signed for them). On the last page of the Ad Seg. recommendation, second paragraph, it says; "On 6/6/95 during a search of proctor's SHU cell 250, a sharpened nail clipper was found in the electric plate cover". This exact same information was ordered expunged off my record by a Judge (See Proctor V. Goord, 801 NYS.2d 517 "Sup. Ct. 2005"). This same expunged information has been being relied upon to maintain me in Ad Seg during sham meaningless reviews.

Grievant Signature   *Patrick Proctor*      Hearing Date: _____

Grievance Clerk _____

Advisor Requested?   ☐ Yes   ☐ No   Who: _____

**Action requested by inmate:**

I want the above quoted words, expunged from the Ad Seg Recommendation of 12/8/03, as all my parole and institutional records, as the Judge has already ordered. I want notification that this has been done, and I want a written statement by Superintendent D. Artus, that the quoted words, will not be used against me ever in the future in any way, but especially as an excuse to maintain me in Ad Seg.

This Grievance has been informally resolved as follows: _____

_____

_____

This informal resolution is accepted: _____
(To be completed only if resolved prior to hearing)

Grievant Signature _____      Date: _____

If unresolved, you are entitled to a hearing by the Inmate Grievance Resolution Committee (IGRC).
*An exception to the time limit may be requested under Directive #4040, section 701.6(g).      I.G.R.C./2a

Grievant is advised D. Jarvis was contacted and states nothing was received from the grievant. Grievant is advised to write to D. Jarvis and provide proof of the judges orders that expunge such request off grievant's record.

Date returned to inmate: _____ 7/30/09 _____     I.G.R.C. Members: _____

Chairperson: _____

*Return within 7 days and check appropriate boxes.*

☑ I disagree with IGRC response and wish to appeal to the Superintendent.

☐ I have reviewed deadlocked responses. Pass-Thru to Superintendent.

☐ I agree with the IGRC response and wish to appeal to the Superintendent.

☐ I apply to the IGP Supervisor for review of dismissal.

Grievant's Signature: _Patricia Preston_     Date: 7-31-09

Grievance Clerk's Receipt: _____     Date: _____

---

To be completed by Grievance Clerk

Grievance Appealed to the Superintendent: _____
　　　　　　　　　　　　　　　　　　　　Date

Grievance forwarded to the Superintendent for action: _____
　　　　　　　　　　　　　　　　　　　　　　　　Date

*An exception to the time limit may be requested under Directive #4040, section 701.6(g).

Form 2133 (Rev. 6/06)

| STATE OF NEW YORK DEPARTMENT OF CORRECTIONAL SERVICES **INMATE GRIEVANCE PROGRAM** **DALE A. ARTUS SUPERINTENDENT** | Grievance No. **CL – 59286** | | Date Filed 7/29/09 |
|---|---|---|---|
| | Facility **CLINTON CORRECTIONAL FACILITY** | | Policy Designation |
| | Title of Grievance Expunge Info from Record | | Class Code |
| | Superintendent's Signature *T. LaValley ASS* | | Date 8/5/09 |
| Grievant: PROCTOR, P. | Din # 89A9763 | | Housing Unit SHU-46 |

Inmate Records complied with grievant's FOIL request. Grievant has not contacted Inmate Records with regard to his request of expunging information from his records, nor has Inmate Records received a Court Order directing same.

Inmate Records has checked the grievant's legal file and I did not find any order regarding the grievant's claim. If the grievant has a copy of the order in his possession, I suggest that he forward it to the appropriate security/guidance personnel so they may update his records, if applicable.

---

### APPEAL STATEMENT

If you wish to refer the above decision of the Superintendent, please sign below and return this copy to your Inmate Grievance clerk. You have seven (7) calendar days from receipt of this notice to file your appeal.* Please state why you are appealing this decision to the C.O.R.C. In my grievance I gave the case cite where the Judge ordered my records expunged, I will send the Ct. decision as proof of order. The Att. Gen. and DOCS were supposed To expunge my records in 2005. I'm appealing To exhaust Admin. Remedies, and show, at least until now, my records were not expunged.

_Patrick Proctor_                              _8-7-09_
Grievant's Signature                              Date

| STATE OF NEW YORK | Grievance Number<br>CL-59286-09 | Desig./Code<br>I/42 | Date Filed<br>7/29/09 |
| --- | --- | --- | --- |
| DEPARTMENT OF | Facility<br>Clinton Correctional Facility | | |
| CORRECTIONAL SERVICES | Title of Grievance<br>Expunge Information From Records | | |
| INMATE GRIEVANCE PROGRAM<br>CENTRAL OFFICE REVIEW COMMITTEE | Director's Signature | | Date<br>10/21/09 |



10/21/09

## GRIEVANT'S REQUEST UNANIMOUSLY DENIED

Upon full hearing of the facts and circumstances in the instant case, and upon recommendation of Department's Counsel, the action requested herein is hereby denied. CORC upholds the determination of the Superintendent for the reasons stated.

Contrary to the grievant's assertions, CORC has not been presented with sufficient evidence to substantiate any malfeasance by staff. CORC notes that the grievant's concerns regarding his Administrative Segregation status were addressed in the prior CORC decision CL-59069-09, dated 7/29/09, which states, in part, i.e.:

> CORC notes that any irregularities or concerns regarding an Administrative Segregation review may be submitted prior to his next scheduled review.

> Additionally, the grievant may write to the Superintendent or his designee to make a statement regarding the need for continued administrative segregation. The reasons stated in this notice, any written statement that you submit, as well as the grievant's overall custodial adjustment will be considered during the next scheduled review, in accordance with Directive #4933, Section 301.4.

> CORC has determined that an existing mechanism, with a well defined appeal procedure, responds to challenges to the accuracy of information, and is set forth in NYCRR, Title 7, Sections 5.50 - 5.52. Accordingly, the grievant may direct his request for expunction to the custodian of the records at the facility, if dissatisfied with the determination, the grievant may appeal the results of that coordinator's decision to the Inspector General.

JA/

-------------------------------------------------------------------------------------------------------------
-------------------------------------------------------------------------------------------------------------

Exhibit `B`

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONAL SERVICES
## INMATE GRIEVANCE COMPLAINT

**GRIEVANT'S COPY**

Grievance No. **43,455-07**

Great Meadow _____ CORRECTIONAL FACILITY

Date: **7-27-07**

Name: **Patrick Proctor**    Dept. No.: **89-A-9763**    Housing Unit: **F1-03**

Program: **Ad Seg**    AM _____ PM

*(Please Print or Type - This form must be filed within 14 days of Grievance Incident)*

Description of Problem (Please make as brief as possible): I'm in Admin. Seg. and I'm supposed To Receive meaningful periodic Review's every 60 day's. My Reviews are a Sham. They are being used as a pretext for indefinitely confining me To SHU and they are perfunctory in Nature. This has been, and continues To be, an on going problem. My Review's are considering false information that my hearing officer knew To be false at the time of the initial Admin Seg hearing. (e.g. that I extricated myself from mechanical restraints while at Wende C.F., that I extricated →

Grievant Signature: *Patrick Proctor* 89-A-9763 7-27-07

Continued Pg. 1 of 2

Grievance Clerk _____ Date: _____

Advisor Requested: ☑ Yes ☐ No   Who: **Ms. White, Griev. Supervisor**

Action requested by inmate: I Request To be Removed from SHU and placed in the general population with all my privileges Restored. I also Request all this false information be Removed from my Records and never allowed To be used in the future to Ad segre. Also $20000 a day for Compensation, $100,000.00 a day for punitive damages To be paid individually by each person partaking in the sham Reviews.

This Grievance has been informally resolved as follows:

_____

_____

_____

_____

This Informal Resolution is accepted:
(To be completed only if resolved prior to hearing)

Grievant Signature: _____ Date: _____

If unresolved, you are entitled to a hearing by the Inmate Grievance Resolution Committee (IGRC)

myself from handcuffs while confined To my cell at Sullivan C.F. then mysteriously lost them, that I said I desired To be a famous criminal, that I secreted a razor while at Sullivan C.F., that I set fire To my shielded cell at Sullivan C.F. and that I barricaded the cell, that a weapon was found behind a light switch cover in my cell while at Sullivan C.F., that I stated 'I have Too much time To do To be Recaptured' if I escaped etc. among many other false lies and Twisted analogies). Some of my Reviews were actually reviewed and signed by the same Captain whom denied me substantive, as well as procedural due process at the initial placement hearing. My Review's are now, and have been, considering information that I never Received due process on at the initial placement hearing in Dec 2003. This information was never considered at my initial hearing, it wasn't on my Ad Seg Recommendation, nor was it considered in the Ad Seg placement decision /disposition. (e.g. My criminal conviction of murder, robbery and possession of a weapon etc). There should be enough information here for you To do a proper investigation. Please interview me if you need more. All my Review's are in my security folder. All person's involved in these sham, pretext and perfunctory Reviews, Should be on notice that your violating my 14Th Amendment Rights To due process and 8Th Amendment Rights not To be subjected To cruel and unusual punishment.

C.C. file

Sincerely yours,

Patrick Proctor

PATRICK PROCTOR Pro se

Page 2 of 2

TO:     MR. PATRICK PROCTOR

FROM : IGRC

AUGUST 17, 2007

RE: DISMISSAL OF GRIEVANCE / EXHAUSTION OF REMEDIES:

GRIEVANCE #43,455-07 WAS DISMISSED, AND THEREFORE, YOU MAY NOT APPEAL IT TO THE SUPERINTENDENT, UNLESS THE IGP SUPERVISOR DEEMS THE DIMISSAL WAS UNWARRANTED. THE IGP SUPERVISOR HAS DECIDED TO UPHOLD THE DISMISSAL.

BY FILING THIS GRIEVANCE, AND HAVING IT DISMISSED, YOU **HAVE** EXHAUSTED YOUR ADMINISTRATIVE REMEDIES.

IF YOU HAVE ANY FURTHER QUESTIONS, PLEASE FEEL FREE TO ASK, AND I WILL DO MY BEST TO ANSWER THEM.

SINCERELY,

X _____
GEORGE 'RED' SCHNACKENBERG
IGRC HEAD CLERK

Exhibit `C'

FORM 2131E (REV. 6/06)

**RECEIVED** STATE OF NEW YORK DEPARTMENT OF CORRECTIONAL SERVICES
**INMATE GRIEVANCE COMPLAINT**
JUN 0 1 2009
INMATE GRIEVANCE

Grievance No.
CL-59069-09

_Clinton_ CORRECTIONAL FACILITY

Date _5-20-09_

Name _PATRICK PROCTOR_ Dept.No. _89-A-9763_ Housing Unit _SHU-39_

Program _Admin Seg_ AM _24 hrs, 7 days a week_ PM

*(Please Print or Type - This form must be filed within 21 calendar days of Grievance Incident)\**

Description of Problem: (Please make as brief as possible) Im in Administrative Segregation, Im supposed to Receive MEANINGFUL Periodic Reviews. The Reviews Im Receiving are a sham. The Reviews are perfunctory in nature and are a pretext for indefinitely confining me in SHU. This has been on-going since Feb, 2004. The Reviews have been considering alleged past misconduct charges that either never happened, I was found innocent of at a Due process hearing, OR were expunged
Page 1 of 3 →

Grievant Signature _Patrick Proctor_ 89-A-9763 5-20-09

Grievance Clerk _____ Date: **FILED** JUN 0 1 2009

Advisor Requested ☐ YES ☐ NO Who: _____

Action requested by inmate: Placed in general population with all privileges. Expunge all information the Court already ordered expunged 2 times. $200.00 per day for each day Im in Admin Seg from Feb. 2004 to present.

This Grievance has been informally resolved as follows:

_____
_____
_____
_____

This Informal Resolution is accepted:
(To be completed only if resolved prior to hearing)

C.C. Grievant
File Signature _____ Date: _____

If unresolved, you are entitled to a hearing by the Inmate Grievance Resolution Committee (IGRC).

from my records two times. One approx 8½ yrs prior to the initial Admin Seg placement hearing (e.g. Proctor V. Coombe) and another time approx two yrs after the initial placement hearing (e.g. Proctor V. Goord).

From 4-1-05 to 6-1-06, Charles F. Kelly, Jr. sat as the Committee Chairman of the review committee. The same person whom was my hearing officer when placed in Admin Seg in 12-24-2003.

Many of my reviews considered new evidence/crimes of commitment (e.g. murder, robbery, possession of weapon), which was never included and used as a factor during my placement hearing. I was never afforded a right to be heard on these new issues.

Atleast one review form was drawn up and dated two months prior to the actual date the review was supposed to cover, and 21 days before my letter of consideration (that was mentioned in another section of this same review) was even drawn up. (e.g. Review dated 10-6-04, that covered the 12-6-04 review period).

I submitted a letter dated 8-28-05 for consideration on a periodic review and mentioned (as I have many times before) that one of the allegations used against me at the hearing (an during the reviews) was already expunged off my record. In a review dated 10-5-05, there response was: "As we have repeatedly stated, unless administratively or judicially set aside, this committee has a right to rely on the findings made during the inmates Admin Seg hearing". What's startling about this response is, it was judicially set aside over 10 yrs prior to that statement (Proctor V. Coombe) and again two days after that statement (Proctor V. Goord), yet the same info is still on the Ad seg recommendation and was (atleast up until that point) relied upon during the reviews.

Whats also shocking about that last quoted review response is, one of the repeated complained about item's used to place and maintain me in Ad seg, was <u>administratively</u> set aside approx 8½ years prior to the Ad seg hearing.

That same review quotes two different dates where its claimed I submitted a letter for consideration at that same review. Both dates are wrong.

All of the above suggest, clearly the reviews are a sham, not meaningful and perfunctory in nature.

Dept. Comm. LeClaire has been rubber stamping these sham reviews since Feb. 04, and has been on notice of all Constitutional Violations mentioned hereing of my right to have meaningful Periodic Review. He's acting with deliberate indifference. (ie. from Feb. 04 to present).

From atleast 4-1-05 to 6-1-06 C.F. Kelly, Jr. and L.J. LeClaire Jr. were acting in concert in a conspiracy to deny me due process, with deliberate indifference.

There is enough info here to do an investigation.

Patrick Proctor 89·A·9763  5-20-09

<u>Action Requested</u>: I request to be placed in general population with all privileges restored. I request the court ordered expunged information mentioned herein, be expunged from my Ad seg initial hearing recommendation. I request $200.00 per day for each day I'm in Ad Seg.

C.C. File

Sincerely

Patrick Proctor

**I.G.R.C. Response:**

Grievont is advised as per IGP Supervisor that a hearing was conducted concerning his Administrative Segregation status. At That hearing it was determined that the placement is appropriate. Administrative Segregation status is Reviewed periodically by Department officials to determine the need for continued placement.

Date returned to inmate: _____   I.G.R.C. Members: _____

_____

Chairperson: _____          _____

_____

*Return within 7 days and check appropriate boxes.*

☑ I disagree with IGRC response and wish to appeal to the Superintendent.

☐ I have reviewed deadlocked responses. Pass-Thru to Superintendent.

☐ I agree with the IGRC response and wish to appeal to the Superintendent.

☐ I apply to the IGP Supervisor for review of dismissal.

Grievant's Signature: _____  Date: 6-3-09

Grievance Clerk's Receipt: _____  Date: _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

To be completed by Grievance Clerk

Grievance Appealed to the Superintendent: _____
                                            Date

Grievance forwarded to the Superintendent for action: _____
                                                        Date

*An exception to the time limit may be requested under Directive #4040, section 701.6(g).

I.G.R.C./2b

The grievant alleges that he is not receiving proper reviews for Administrative Segregation.

Investigation has revealed that the grievants status is reviewed every sixty days in accordance with Directive #4933, 301.4, (d). In addition that status review is forwarded to central office to be reviewed and a final determination to retain or release the grievant from Administrative Segregation is made by the Deputy Commissioner.

The grievant may submit a written statement to the superintendent concerning information related to his Administrative Segregation status. This statement will be forwarded to the central office review committee for review. The Inmate Grievance Program is not the appropriate mechanism to utilize to receive monetary awards.

---

## APPEAL STATEMENT

If you wish to refer the above decision of the Superintendent, please sign below and return this copy to your Inmate Grievance clerk. You have seven (7) calendar days from receipt of this notice to file your appeal.* Please state why you are appealing this decision to the C.O.R.C.

The Reviews are a sham/not meaningful/perfunctory in nature. They have been considering inaccurate information and an incident twice ordered to be expunged by the court. The Reviews are being used as a pretext to indefinitly confine me to Admin. Seg.

_Patrick Proctor_
Grievant's Signature

6-17-09
Date

_____
Grievance Clerk's Signature

_____
Date

*An exception to the time limit may be requested under Directive #4040, section 701.6(g)



| STATE OF NEW YORK | Grievance Number | Desig./Code | Date Filed |
|---|---|---|---|
| DEPARTMENT OF | CL-59069-09 | D/24 | 6/1/09 |
| CORRECTIONAL SERVICES | Facility<br>Clinton Correctional Facility | | |
| | Title of Grievance<br>Inadequate Admin Seg Review | | |
| INMATE GRIEVANCE PROGRAM<br>CENTRAL OFFICE REVIEW COMMITTEE | Director's Signature *Lindquist Asst.* | | Date<br>7/29/09 |

7/29/09

## GRIEVANT'S REQUEST UNANIMOUSLY DENIED

Upon full hearing of the facts and circumstances in the instant case, and upon recommendation of Department's Counsel, the action requested herein is hereby denied. CORC upholds the determination of the Superintendent for the reasons stated.

Contrary to the grievant's assertions, CORC has not been presented with sufficient evidence to substantiate any malfeasance by staff. CORC notes that any irregularities or concerns regarding an Administrative Segregation review may be submitted prior to his next scheduled review.

Additionally, the grievant may write to the Superintendent or his designee to make a statement regarding the need for continued administrative segregation. The reasons stated in this notice, any written statement that you submit, as well as the grievant's overall custodial adjustment will be considered during the next scheduled review, in accordance with Directive #4933, Section 301.4.

CORC has determined that an existing mechanism, with a well defined appeal procedure, responds to challenges to the accuracy of information, and is set forth in NYCRR, Title 7, Sections 5.50 - 5.52. Accordingly, the grievant may direct his request for expunction to the custodian of the records at the facility, if dissatisfied with the determination, the grievant may appeal the results of that coordinator's decision to the Inspector General.

CORC asserts that monetary damages are not an available remedy through the inmate grievance mechanism. CORC notes that Directive #4040, Section 701.1, states, in part, that the grievance program is not intended to support an adversary process.

Ja/
-----------------------------------------------------------------------------------------------------------------
-----------------------------------------------------------------------------------------------------------------