**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

PATRICK PROCTOR,

                Plaintiff,

                v.

LUCIEN J. LECLAIRE, JR. et al.,

                Defendants.
_____

9:09-cv-1114
(GLS/DEP)

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFF:**<br>Kirkland, Ellis Law Firm<br>601 Lexington Avenue<br>New York, NY 10022 | GEOFFREY A. DAVID, ESQ.<br>ELLIOT C. HARVEY<br>SCHATMEIER, ESQ.<br>ERIC S. MERIN, ESQ. |
| **FOR THE DEFENDANTS:**<br>HON. ERIC T. SCHNEIDERMAN<br>New York State Attorney General<br>The Capitol<br>Albany, NY 12224 | CATHY Y. SHEEHAN<br>JOSHUA L. FARRELL<br>Assistant Attorney Generals |

**Gary L. Sharpe
District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Patrick Proctor commenced this action pursuant to 42 U.S.C.

§ 1983, alleging defendants[1] violated his due process rights under the Fourteenth Amendment by not engaging in meaningful periodic review of his administrative segregation.  (2d Am. Compl., Dkt. No. 48.)  Before the court is defendants' motion for summary judgment.  (Dkt. No. 89.)  For the reasons that follow, defendants motion is granted.

## II. Background

### A. Facts[2]

Since 1989, Proctor has been an inmate in the custody of DOCCS serving a thirty-two and one-half years to life sentence for second degree murder and attempted escape.  (Defs.' Statement of Material Facts (SMF) ¶ 1, Dkt. No. 89, Attach. 2.)  In 1994, Proctor and three other inmates escaped from Shawangunk Correctional Facility and remained at large for five hours with the assistance of an accomplice who was on parole.  (*Id.* ¶ 3; Dkt. No. 90, Attach. 17 at 2.)  Upon capture, Proctor was sentenced to the special housing unit (SHU) for nine years and one month on findings of

---

[1] Defendants are the New York State Department of Corrections and Community Supervision (DOCCS) current and former Deputy Commissioners of Correctional Facilities, Joseph Bellnier and Lucien J. LeClaire, Jr., and the current and former Acting DOCCS Commissioners, Anthony J. Annucci and Brian Fischer.  (*See generally* 2d Am. Compl., Dkt. No. 48.)  Proctor also named Glenn S. Goord, DOCCS Commissioner from 1999 through 2006, as a defendant, but he was later voluntarily dismissed.  (Dkt. No. 75.)

[2] Unless otherwise noted, the facts are undisputed.

escape, weapons possession, assault, and fighting. (Defs.' SMF ¶¶ 3-5.)

After Proctor's disciplinary SHU confinement, DOCCS recommended he be retained in SHU under administrative segregation (hereinafter "Ad Seg"). (*Id.* ¶ 6.) To support Proctor's Ad Seg placement, DOCCS cited incidents including his 1994 escape, other attempted escapes, a 1990 stabbing of an inmate, and misconduct while in SHU. (*Id.* ¶ 7; Dkt. No. 90, Attach. 17 at 2.) Proctor's SHU misconduct included stabbing a SHU inmate, starting multiple fires, and hiding a razor in his rectum. (Defs.' SMF ¶ 7.) After a December 2003 hearing, the hearing officer found that Proctor posed a threat to the safety and security of the facility and ordered his placement in Ad Seg.[3] (*Id.* ¶ 8); *see also* N.Y. Comp. Codes R. & Regs. (NYCRR), tit. 7 § 301.4(b). Proctor has been confined to Ad Seg since December 2003, or over 4,000 days, and, as of June 2014, was the second longest inmate confined in Ad Seg. (Pl.'s Additional SMF ¶¶ 3-4, Dkt. No. 90, Attach. 1.)

Under DOCCS' regulations, a three-member facility committee must review an inmate's Ad Seg status every sixty days and report on: (1) the

---

[3] Proctor unsuccessfully challenged his original Ad Seg placement. *See Proctor v. Kelly* (*Proctor I*), 9:05-CV-0692, 2008 WL 5243925 (N.D.N.Y. Dec. 16, 2008).

rationale for an inmate's initial Ad Seg placement, (2) the inmate's behavior and attitude in Ad Seg, and (3) additional factors that support or detract from the inmate's continued placement. *See* 7 NYCRR § 301.4(d)(1)(i)-(iii). If an inmate has been designated for Central Office review, as in Proctor's case, a three-member Central Office committee reviews the facility committee report and any written statements from the inmate. *See id.* § 301.4(d)(3); (Defs.' SMF ¶ 16.) It then recommends whether the inmate should remain in Ad Seg or be released to the general prison population. *See* 7 NYCRR § 301.4(d)(3). The deputy commissioner for correctional facilities then determines whether the inmate should remain in or be released from Ad Seg based on the committee reports and any written statements from the inmate. *See id.*

Since Proctor's Ad Seg placement, DOCCS has reviewed his status every sixty days. (Defs.' SMF ¶ 35.) Proctor submitted letters in support of his release from Ad Seg, which the Central Office committee considered at his periodic reviews and responded to in their reports and recommendations to the deputy commissioner for correctional facilities. (*See generally* Dkt. No. 90, Attach. 4.) Defendants Lucien J. LeClaire, Jr. and Joseph Bellnier served consecutively as the Deputy Commissioner for

4

Correctional Facilities during Proctor's time in Ad Seg. (Dkt. No. 89, Attach. 4 ¶ 1, Attach. 6 ¶ 1.) LeClaire and Bellnier testified that they reviewed an inmate's AD Seg status by looking at the reports of both committees, any additional materials submitted by the inmate, and by occasionally speaking with committee members. (Dkt. No. 90, Attach. 5 at 24, 26, Attach. 8 at 23-24.) Both LeClaire and Bellnier reviewed Proctor's Ad Seg status and determined that the original reasons for his placement established that he "continue[d] to pose an extreme threat to the safety and security of any correctional facility." (Defs.' SMF ¶ 21; Dkt. No. 89, Attach. 4 ¶¶ 14-15, Attach. 6 ¶¶ 14-15.) Proctor contends he has been primarily retained in Ad Seg because of his 1994 escape from Shawangunk. (Pl.'s SMF ¶ 21, Dkt No. 90, Attach. 1; Dkt. No. 90, Attach.12 at 41.)

In support of his due process claims, Proctor identifies evidence that allegedly shows his periodic reviews were not meaningful or were pretext for indefinite Ad Seg placement. Proctor cites Bellnier's testimony that his staff fills out his portion of an inmate's periodic review and then presents it for Bellnier to sign. (Dkt. No. 90, Attach. 5 at 30.) Additionally, Proctor notes that Bellnier admits he was not trained on how to make final Ad Seg determinations. (*Id.*) Proctor also points to LeClaire's testimony, where he

5

refused to speculate whether forty years of positive behavior would warrant Proctor's release from Ad Seg. (Dkt. No. 90, Attach. 8 at 36.)

Proctor identifies testimony from committee members not named as defendants. Christopher DeLutis, a facility committee member on thirteen of Proctor's periodic reviews, testified that Proctor could not do anything to change his belief that Proctor was a flight risk. (Dkt. No. 90, Attach. 6 at 46, Attach. 11 at 7.) DeLutis also testified that Proctor could not do anything to change his opinion about whether Proctor should be released to the general prison population, stating he "believe[d] [Proctor] is right where he belongs." (Dkt. No. 90, Attach. 6 at 45.) Joseph Porcelli, a facility committee member for half of Proctor's periodic reviews, testified that Proctor's aging may be a positive release factor. (Dkt. No. 90, Attach. 9 at 43, Attach. 11 at 7.) Additionally, Porcelli testified that, in his experience, an inmate in Ad Seg has never been released back to the general prison population. (Dkt. No. 90, Attach. 9 at 18.)

Although the facility committee recognized his improved behavior in one review, (Dkt. No. 90, Attach. 4 at 116), Proctor notes that neither the facility committee or the Central Office committee ever recommended his release from Ad Seg, (Dkt. No. 90, Attach. 4). Proctor also identifies

6

numerous periodic reviews with identical language.  (*Id.* at 6-7, 10-11, 14-15, 16-17, 140-41.)  In addition, Proctor submits that his escape, absconding, and assaults on staff and inmates occurred ten years before his first periodic review.  (Dkt. No. 90, Attach. 13.)

**B.    Procedural History**

Proctor commenced this action *pro se* in 2009 against LeClaire.  (Compl., Dkt. No. 1.)  In 2010, Proctor filed an amended complaint to allege additional factual support that the sixty-day periodic reviews of his Ad Seg placement satisfied the continuing violation doctrine.  (Am. Compl., Dkt. No. 19; Dkt. No. 11.)  The court dismissed that pleading reasoning that Proctor's challenge to his placement in Ad Seg in *Proctor v. Kelly* (*Proctor I*), 9:05-CV-0692, 2008 WL 5243925 (N.D.N.Y. Dec. 16, 2008), barred him from challenging the periodic reviews of his Ad Seg under claim and issue preclusion.  (Dkt. No. 30 at 6-10; Dkt. No. 31.)  Proctor appealed.  (Dkt. No. 32.)

On appeal, the Second Circuit vacated this court's judgment and remanded for further proceedings.  (Dkt. No. 36); *see Proctor v. LeClaire*, 715 F.3d 402, 417 (2013).  The Second Circuit held that Proctor was not precluded from challenging his periodic reviews because they were not the

7

same transaction as his initial placement, *Proctor*, 715 F.3d at 413, and Proctor did not have a full and fair opportunity to litigate the constitutionality of his periodic reviews, *id.* at 416.

After the Second Circuit's mandate, counsel appeared for Proctor for the first time. (Dkt. No. 39.) In 2013, Proctor filed a second amended complaint adding additional defendants, (Dkt. No. 48), and defendants answered, (Dkt. No. 60). After discovery, defendants moved for summary judgment. (Dkt. No. 89.)

### III. <u>Standard of Review</u>

The standard of review pursuant to Fed. R. Civ. P. 56 is well established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

### IV. <u>Discussion</u>

**A.** <u>**Procedural Due Process**</u>

Defendants argue that Proctor's procedural due process rights were not violated because Proctor received all the process he was due through periodic reviews. (Dkt. No. 89, Attach. 7 at 1-4.) Defendants contend that

8

Proctor's timely reviews were not meaningless because Bellnier and LeClaire thoroughly considered the committees' recommendations and determined that the original reasons for Proctor's placement remained compelling. (*Id.* at 3-4.) Proctor counters that there remain material issues of fact regarding whether his procedural due process rights were violated. (Dkt. No. 90 at 4.) First, Proctor argues he has a liberty interest because of the duration and conditions of his confinement. (*Id.* at 5-7.) Second, Proctor contends that his periodic reviews were not meaningful because they were pretext for his indefinite confinement, contained conclusory language, and relied on inappropriate support. (*Id.* at 9-19.)

Under the Fourteenth Amendment, states may not "deprive any person of . . . liberty . . . without due process of law." U.S. Const. amend. XIV, § 1. Procedural due process rights may extend to inmates, *see Wolff v. McDonnell*, 418 U.S. 539, 556 (1974), and a claim for violations of such rights requires the inmate to show that: (1) he or she had a liberty interest and (2) was deprived of that interest without sufficient process. *See Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000). An inmate has a state-created liberty interest if his or her confinement "imposes atypical and significant hardship . . . in relation to the ordinary incidents of prison life."

*Sandin v. Conner*, 515 U.S. 472, 484 (1995). Although the Second Circuit has not adopted a bright line rule, it has held that an inmate generally has a liberty interest under *Sandin* if he or she is confined under "normal SHU conditions" for at least 305 days. *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000). Additionally, *Sandin* applies to challenges of confinement in SHU for administrative or disciplinary reasons. *See Arce v. Walker*, 139 F.3d 329, 335 (2d Cir. 1998).

Here, Proctor has been confined to SHU under Ad Seg for over 4,000 days. (Pl.'s Additional SMF ¶ 3.) This duration alone is sufficient to invoke Proctor's liberty interest because it far exceeds the 305-day threshold identified in *Colon* and, thus, demonstrates that Proctor experienced an "atypical and significant hardship" under *Sandin*. *See Bowens v. Smith*, No. 9:11-CV-784, 2013 WL 103575, at *7 (N.D.N.Y. Jan. 8, 2013) (holding that an inmate's allegation of a 500-day confinement in Ad Seg was sufficient to state a liberty interest).

Once an inmate demonstrates a liberty interest, a court must evaluate how much process is due. *See Matthews v. Eldridge*, 424 U.S. 319, 334-35 (1976). For continued placement in Ad Seg, due process requires that "[p]rison officials . . . engage in some sort of periodic review"

of an inmate's status. *Hewitt v. Helms*, 459 U.S. 460, 477 n. 9 (1983).[4] Ad Seg cannot be a "pretext for [the] indefinite confinement of an inmate." *Id.* Nevertheless, "periodic review can be informal and non-adversarial," *Giano v. Selsky*, 91-CV-0166, 2002 WL 31002803, at *7 (N.D.N.Y. Sept. 5, 2002), and "the original reasons for placing [an] inmate in [Ad Seg] may continue to be compelling," *Giano v. Kelly*, No. 89-CV-727(C) (*Kelly II*), 2000 WL 876855, *17 (W.D.N.Y. May 16, 2000).

Defendants and Proctor agree that Proctor received periodic reviews every sixty days since his initial Ad Seg placement. (Defs.' SMF ¶ 35; Pl.'s SMF ¶ 35.) The parties sharply dispute whether those reviews were constitutionally sufficient. Defendants contend that LeClaire and Bellnier complied with due process because their determinations were based on a "thorough review and consideration of the recommendations of both committees" and DOCCS followed the procedure set forth by the regulations. (Dkt. No. 89, Attach. 4 ¶¶ 7, 13-14, Attach. 6 ¶¶ 7, 13-14.) Furthermore, defendants assert that Proctor's escape history and previous assaults on inmates and staff remain compelling factors that support his

---

[4] "Although *Sandin* abrogated . . . *Hewitt*'s methodology for establishing the liberty interest, [*Hewitt*] remain[s] instructive for [its] discussion of the appropriate level of procedural safeguards." *Wikinson v. Austin*, 545 U.S. 209, 229 (2005).

11

continued Ad Seg placement. (Dkt. No. 89, Attach. 7 at 3-4.)

Proctor maintains that defendants conducted perfunctory reviews. However, the evidence that Proctor cites does not demonstrate that the periodic reviews by LeClaire and Bellnier were "pretext for [Proctor's] indefinite confinement." *Hewitt*, 459 U.S. at 477 n. 9. Although Bellnier's staff filled out his portion of the periodic review, Bellnier independently reviewed the facility and Central Office committee reports as well as any letters Proctor submitted before signing off on Proctor's continued Ad Seg placement. (Dkt. No. 90, Attach 5 at 24-26.) Nor does LeClaire's refusal to speculate about the period of good behavior necessary for Proctor's release show that Proctor's periodic reviews were not meaningful. Like Bellnier, LeClaire reviewed the committee reports, Proctor's letters, and consulted with committee members when necessary before making his determination. (Dkt. No. 90, Attach. 8 at 23-24, 41.)

Proctor relies on *Giano v. Kelly* (*Kelly I*), 869 F. Supp 143 (W.D.N.Y. 1994), to support his contention that his reviews were not meaningful. In *Kelly I*, the court held that there was a genuine issue of material fact as to whether the inmate's review was meaningful, because prison officials failed to explain the apparent change in the reason for the inmate's confinement.

*See id.* at 149-51.  The inmate was originally placed in Ad Seg because of an attempted escape, unknown reasons surrounding an incident in which he was stabbed, and the conditions of his current prison placement.  *See id.* at 149.  However, later periodic reviews suggested he only remained in Ad Seg because of the stabbing incident.  *See id.*  Unlike *Kelly I*, Proctor's periodic reviews demonstrate that his continued confinement is based on the same reasons as his initial placement.  (*See generally* Dkt. No. 90, Attach. 4); *see Selsky*, 2002 WL 31002803 at *7 (explaining that, to satisfy due process, an inmate does not even need to be notified of his periodic reviews if the reasons for his Ad Seg confinement remain the same).

Furthermore, Proctor had the opportunity and, in fact, did submit letters to the committees in support of his release.  *See Kelly I*, 869 F. Supp at 151 (suggesting that due process is more likely satisfied if inmate has an opportunity to show he is no longer a threat).  The Central Office committee considered and directly responded to Proctor's letters.  (*See generally* Dkt. No. 90, Attach. 4.)  Additionally, unlike *Kelly I*, Proctor received reports of his periodic reviews which detailed the rationale for his confinement as well as the dates and the results of his reviews.  *See Kelly I*, 869 F. Supp at 151 (suggesting that due process is more likely satisfied

if inmates are provided with the reasons for their confinement and the dates and results of their periodic reviews); *see also* 7 NYCRR § 301.4(d). Accordingly, although Proctor had a liberty interest in remaining free of Ad Seg, he received sufficient process.

B. **Substantive Due Process**

Defendants argue that they are entitled to summary judgment on Proctor's substantive due process claim because Proctor cannot challenge his periodic reviews on this ground until a procedural due process violation has been found. (Dkt. No. 94 at 4.) Proctor contends that questions of fact remain regarding whether defendants violated his substantive due process rights because: (1) prison officials continually approved his confinement in Ad Seg despite its "devastating effects" on him and (2) the manner that defendants periodically review his Ad Seg placement demonstrates that he will never be released. (Dkt. No. 90 at 20-21.)

The Fourteenth Amendment also has a substantive component that "protects individuals against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense but not against government action that is incorrect or ill-advised." *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994) (internal quotation marks and

14

citations omitted). "To establish a violation of substantive due process rights, a plaintiff must demonstrate that the state action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 431 (2d Cir. 2009) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)).

"[P]rison officials' deliberate indifference to inmate welfare in non-emergency situations can be conscience-shocking because officials have time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations." *Lombardi v. Whitman*, 485 F.3d 73, 82 (2d Cir. 2007) (internal quotation marks and citation omitted); *see also Cty. of Sacramento*, 523 U.S. at 851. When employed, "[t]he deliberate indifference standard applied in a substantive due process case is the same as that applied in Eighth Amendment cases." *Estate of Johnson v. Weber*, 785 F.3d 267, 272 (8th Cir. 2015). Deliberate indifference is the reckless disregard of a risk of harm of which a person is aware. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and

15

he must also draw the inference." *Id.*

Here, although Proctor offers a medical expert report, defendants did not exhibit conscious-shocking behavior because they were never made aware of the alleged devastating effects of Proctor's continued placement in Ad Seg. To support the defendants' awareness, Proctor relies solely on general knowledge about inmates in solitary confinement. (Dkt. No. 90 at 21-22.) However, Proctor fails to raise a question of material fact showing that defendants were aware of the alleged harms to Proctor. Thus, summary judgment is granted for defendants.[5]

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion for summary judgment (Dkt. No. 89) is **GRANTED**; and it is further

**ORDERED** that Proctor's second amended complaint (Dkt. No. 48) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case; and it is further

---

[5] Furthermore, having ruled that the periodic reviews of Proctor's Ad Seg status are not pretext for indefinite confinement, there is no factual question regarding whether Proctor could ever be released. Accordingly, defendants are entitled to summary judgment on this theory as well.

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

October 14, 2015
Albany, New York

_____
Gary L. Sharpe
U.S. District Judge